JOANOS, Judge.
In this workers’ compensation case, the claimant appeals the final order of the deputy commissioner which denied his claim for temporary total disability benefits (TTD) or temporary partial disability benefits (TPD), wage loss benefits, attorneys' fees, and costs. Claimant has raised two issues on appeal which, for ease of discussion, we state as three issues. Claimant alleges the deputy commissioner erred (1) in failing to award TTD benefits for the period of January 2, 1984, through January 16, 1984; (2) in failing to award TTD benefits for the period of August 11, 1984, through October 11,1984; and (3) in failing to award wage loss benefits for the period of October 11, 1984, through November 30, 1984. We affirm in part and reverse in part.
On December 19, 1983, claimant was injured in a work-related accident when the trunk of a tree fell across his legs. Claimant’s supervisor, John Canfield, was notified. Canfield traveled to the job site and transported claimant to his (Canfield’s) private physician, Dr. Oaklander. Claimant was treated by Dr. Oaklander until January 2, 1984, at which time Dr. Oaklander released claimant with a recommendation that claimant see a specialist. Claimant stated that although Dr. Oaklander released him to return to work on January 2, 1984, claimant did not return to work until January 16, 1984, because he was in pain and his legs were swollen for two weeks. In addition, his supervisor, Canfield, had told claimant not to come in if he was in too much pain to work.
Claimant went back to work on January 16, 1984, and remained at work through *1389 January 26, 1984. He was examined by Dr. Posner, an orthopedic surgeon, on January 20, 1984. Dr. Posner’s initial diagnosis was Achilles tendinitis of the right foot, with contusion to the undersurface of the calcaneous. Dr. Posner’s subsequent treatment included placing the right foot in a short-leg walking cast; injecting the foot with Xylocaine, Marcaine, and Decadron, for local relief; prescribing heat applications; prescribing therapy; directing claimant to avoid prolonged walking, standing, or weight bearing; casting the foot a second time and again administering injections for pain; fitting claimant with an ankle brace; and fitting claimant with a heel lift.
Claimant was hospitalized from March 4 to March 6, 1984, as a result of a suicide attempt, which he and the examining psychiatrist attributed to the stress and frustration he was experiencing due to his inability to work, his pain, and his inability to comprehend and cope with the medical — legal — insurance network.
Several instances of conflicting evidence were presented at the hearing on this claim. First, the South Florida manager of Farrens testified that the company records, which are maintained in Jacksonville, reflect that claimant returned to work on January 2, 1984, and continued to work until January 26,1984 — when his right foot was placed in a cast. The manager was unable to produce any evidence that claimant was paid for the January 2 to January 16, 1984, time period. Claimant’s testimony, which was corroborated by that of his supervisor John Canfield, was that he did not return to work until January 16,1984— and that this delay was with his supervisor’s consent.
The medical reports prepared by Dr. Pos-ner all indicate that claimant was released to light duty work only, with no prolonged periods of standing, walking, or weight bearing. Despite the limitations placed on claimant, his foreman stated that as a “ground man,” claimant was required to be on his feet steadily for an eight-hour shift. And claimant’s supervisor described claimant’s post-injury duties as dragging limbs and chipping, and carrying 40 to 50 pound logs.
Claimant’s employment with Farrens was terminated on April 4, 1984. According to claimant, his foreman told him he was fired because he was late and because he was not working hard enough. The foreman stated claimant was terminated for being late and because of his attitude.
On October 11, 1984, claimant was rated by Dr. Posner as having a permanent partial impairment of 10% to the right lower extremity, which corresponds to a 4% permanent partial impairment of the body as a whole based on the American Medical Association guidelines. Dr. Posner advised claimant to look for an office job.
According to claimant’s testimony, he applied for jobs from August 14, 1984, until October 11, 1984, at gas stations, Rose’s, Murray’s, Burdines, and Penney’s. After a while he stopped listing places where he sought work unless he had been allowed to fill out an application. One job search list was admitted into evidence. Claimant stated there were jobs available at each place he applied, and that the jobs were within his capabilities had it not been for his injury. During the last two weeks of November 1984, claimant obtained a temporary job at an art supply business. His duties included shipping, packaging, and building frames. Claimant also sought employment without success, with Joe Hanson’s Tree Service and with an Exxon station where he had worked in 1983 at the same time he was employed by Farrens.
The initial claim for benefits was filed on September 17, 1984, and an amended claim was filed on December 11, 1984. On January 21, 1985, the deputy commissioner entered an order denying all benefits.
The deputy commissioner’s order found that claimant was not temporarily and totally disabled from January 1, 1984 through January 16, 1984, since claimant had been released to return to work and he did not attempt to find work. The deputy commissioner stated that benefits could not be awarded absent an effort to work or an adequate job search. With regard to the *1390 claim for benefits for the period from August 14,1984 through October 11, 1984, the deputy commissioner found the claimant’s job search inadequate, in that, according to the deputy, his testimony on the subject of job contacts did not identify the dates, the places, or the persons contacted, and that the job search list he submitted “had little or no support of adequate job search.” With regard to the claim for benefits for the period from October 11 through November 30, 1984, the deputy commissioner again found claimant’s job search inadequate. Although the claimant testified that he had job search lists, he did not submit them at the hearing, saying that his mother had lost them. Finally, the deputy commissioner found the evidence showed that claimant was “perhaps” washing and waxing automobiles at an Exxon station, which the deputy commissioner considered evidence that claimant could have obtained a job in that area. The deputy commissioner stated that claimant had “made no effort to get a position along this line.”
We recognize that “it is the deputy commissioner’s function to determine credibility and resolve conflicts in the evidence,” Reynolds v. Neisner Brothers, Inc., 436 So.2d 1070, 1072 (Fla. 1st DCA 1983); and that a claimant must present medical evidence of an “inability to work or a conscientious effort to return to work” before there can be an award of TTD benefits. Wilbro Dairies v. Hesch, 438 So.2d 968, 969 (Fla. 1st DCA 1983); Conshor, Inc., v. Barnhart, 422 So.2d 946 (Fla. 1st DCA 1982). Nevertheless, as regards the denial of TTD benefits from January 2, 1984 to January 16, 1984, our examination of the record reflects that Dr. Oaklander’s release was qualified by the recommendation that claimant should consult a specialist, since he (Oaklander) could do nothing more for him. This evidence taken together with the testimony of claimant and claimant’s supervisor that claimant was unable to work for the period in question appears to us to satisfy the criteria for an award of TTD benefits. Claimant’s testimony of an inability to work due to pain was corroborated by Dr. Oaklander’s recommendation and by claimant’s supervisor. Although a deputy commissioner is not required “to make a belabored finding of fact on each and every potential question which may have arisen in the course of the claim and compensation hearing, ... it is the function of the order to provide at least an outline of the essential facts pointing toward the decision ultimately reached by the deputy commissioner.” Mobley v. Fulford Van & Storage, 390 So.2d 426, 428 (Fla. 1st DCA 1980). Since the deputy commissioner’s finding that claimant was not entitled to receive TTD benefits for the period of January 2, 1984, through January 16, 1984, is not supported by competent substantial evidence, we reverse this portion of the order. See: Daytona Linen Service v. Davis, 454 So.2d 46 (Fla. 1st DCA 1984).
With regard to the denial of benefits for the period from August 14, 1984, through October 11, 1984, our examination of the record reflects some inconsistencies between the deputy commissioner’s findings and the claimant’s uncontradicted testimony. Nevertheless, this factual finding was determined for the most part on the claimant’s credibility, and we are mindful of the fact that “[t]he credibility of claimant’s testimony in support of this claim is a matter for the deputy, not us, to decide.” Irving v. City of Daytona Beach, 472 So.2d 810 (Fla. 1st DCA 1985).
Finally, with regard to the denial of wage loss benefits for the period from October 11,1984, through November 30,1984, we again defer to the deputy commissioner’s determination of the claimant’s credibility. On this point, we observe that the deputy commissioner’s finding that claimant made no effort to get a job at a service station is supported only by the deputy commissioner’s credibility determination. The claimant testified to his repeated efforts to return to his former job at the Exxon station. While “we are not permitted to substitute our judgment for that of the deputy on this matter of credibility,” Irving v. City of Daytona Beach, we do find error in the denial of wage loss bene *1391 fits for the last two weeks of November 1984. The record reflects that the claimant obtained a temporary position with an art supply business for two weeks in November 1984, for which he was paid $3.50 an hour. In Stahl v. Southeastern X-Ray, 447 So.2d 399, 401, f.n. 4 (Fla. 1st DCA 1984), this court found that—
Obtaining and performing a full time job clearly constitutes a job “search” and market test. Whether the acceptance of a particular job with lower earnings amounts to a voluntary limitation [of employment] should be determined on the enumerated factors [which appear in Regency Inn v. Johnson, 422 So.2d 870, 877 (Fla. 1st DCA 1982) ] (including of course availability of jobs) and not based simply on a requirement for continued diligent search by claimant after completion of his normal work schedule.
Accordingly, we reverse that portion of the order which denied wage loss benefits for the two-week period in November 1984 when claimant obtained and performed a full time job, and remand for the deputy commissioner to determine whether claimant’s acceptance of this employment constituted a voluntary limitation of his employment.
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
BOOTH, C.J., and MILLS, J., concur.