429 So.2d 419 (1983)
CLOSET MAID CORPORATION and Zurich-American Insurance Companies, Appellants,
v.
Demetris WILSON, Appellee.
No. AM-467.
District Court of Appeal of Florida, First District.
March 31, 1983.
Robert C. Barrett of Cooper & Rissman, Orlando, for appellants.
Seymour H. Rowland, Jr., Ocala, for appellee.
SHIVERS, Judge.
The employer/carrier (E/C) appeals an order issued by the deputy commissioner *420 (D/C) awarding claimant temporary total disability (TTD) benefits as well as attorney's fees. Claimant suffered a compensable injury to his left hand on January 13, 1982. On January 16, 1982, claimant was released to work by his treating physician with the only limitation that claimant not perform work activities that required the use of both hands. Thereafter, on January 21, 1982, claimant was advised by the E/C's placement counselor, Ms. Shuckart, that the E/C had an immediate opening for him within his limitations. Claimant was also advised that his treating physician had confirmed that this position was within his limitations. When advised of the job opening, claimant informed the E/C that he would not be able to begin work until January 25, 1982. At some point prior to January 25, 1982, claimant returned to the E/C and advised Ms. Ross, a personnel counselor for the E/C, that he would be unable to return to work on the 25th because the stitching on his hand had torn and his hand was bleeding. Ross instructed claimant to go to his doctor that day and to then advise her as to whether he would be able to return to work on the 25th. The E/C maintains a policy that when an employee has three consecutive days of unexcused absences, the employee is terminated as a "voluntary quit." Claimant did not report to work as scheduled on the 25th of January. After the E/C received confirmation from claimant's treating physician that claimant was still able to return to work, the E/C processed claimant as a "voluntary quit" on January 28, 1982. Thereafter, claimant attempted to return to work but was advised that the position previously offered to him was no longer available. A claim was then filed seeking attorney's fees, TTD benefits, or in the alternative, temporary partial disability (TPD) benefits from the date of the accident through the date of maximum medical improvement. The E/C defended the claim on the ground that claimant had voluntarily limited his income by failing to accept the job offered to him by the E/C. At the hearing on the claim, the E/C contended that the claimant was processed as a "voluntary quit" because claimant never notified the E/C that he was not going to report to work as scheduled. Claimant testified that he telephoned the E/C on the 26th and 27th of January to explain why he had failed to report to work on January 25th. The D/C found that although claimant was released to work on January 16, 1982, claimant was unable to return to work as scheduled because his hand started bleeding. In addition, the D/C found that the E/C acted in bad faith in handling the claim and that claimant notified the E/C that he would not return to work as scheduled. Based on these findings, the D/C awarded claimant attorney's fees and TTD benefits from January 13, 1982, through May 12, 1982 (the date of the hearing on the claim).
On appeal, the E/C contends that the award of TTD benefits should be reversed because claimant voluntarily limited his income by quitting the job which the E/C had offered him. Since this light duty job paid the same salary as claimant was making prior to his injury, the E/C assert that claimant is not entitled to any temporary disability benefits. We disagree with the E/C's analysis and affirm the award of TTD benefits.
In the order awarding claimant TTD benefits, the D/C specifically found that claimant had notified the E/C that he would not report to work as scheduled. This finding is supported by competent and substantial evidence presented by claimant that he notified the E/C on the first and second day following the date he was scheduled to return to work. Since this finding is clearly dispositive on the question of whether claimant voluntarily quit and thereby voluntarily limited his income, we affirm the award of TTD benefits.
As an aside to the above argument raised by the E/C in their brief, the E/C make mention of the fact that the award of TTD benefits was technically incorrect because the evidence clearly indicates that claimant was able to return to work. See Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982). Although the E/C appear to be correct in their assertion that the D/C *421 erred in labeling the award of temporary disability benefits as TTD rather than TPD benefits, we find it unnecessary to reverse the award of benefits because the E/C has specifically stated in their brief that they do not want a "mere change in the label of the type of benefits awarded." See Appellant's Brief, p. 10. Since a change in the label of the disability benefits awarded from TTD to TPD benefits would not change the monetary value of the award, it is unnecessary for us to reverse the award of benefits.
We must, however, reverse that portion of the order awarding claimant's counsel a reasonable attorney's fee. Section 440.34(2)(b), Florida Statutes (1979), provides for an award of attorney's fees for bad faith on the part of the E/C and requires that any determination of bad faith shall be made by the D/C through a separate fact-finding proceeding. In Embry-Riddle Aeronautical University v. Vestal, 399 So.2d 1033 (Fla. 1st DCA 1981), this court interpreted section 440.34(2)(b), holding that, although the D/C need not conduct a completely separate hearing on the question of bad faith, "the question of entitlement to attorney's fees on the basis of bad faith [must] be specifically litigated as a separate issue with factual evidence presented going directly to that issue." Id. at 1035. The D/C may not simply infer from general testimony that bad faith exists. In this case, claimant failed to present any direct testimony on the issue of bad faith. In fact, there is no indication from the record that claimant ever asserted the E/C's bad faith handling of the claim as the basis for his claim for attorney's fees. Consequently, there was no forthright assertion of bad faith, nor any meaningful litigation on that subject at the hearing before the D/C. The D/C's bare bones finding of bad faith, constructed from testimony introduced not to prove notice and bad faith but for another stated purpose, and the consequent fee award, are therefore reversed. Jess Parrish Memorial Hospital v. Layer, 420 So.2d 917 (Fla. 1st DCA 1982).
AFFIRMED in part and REVERSED in part.
WENTWORTH and JOANOS, JJ., concur.