436 So.2d 1070 (1983)
Pearl Allie REYNOLDS, Appellant,
v.
NEISNER BROTHERS, INC., Employers Insurance of Wausau and Commercial Union Insurance Company, Appellees.
No. AP-283.
District Court of Appeal of Florida, First District.
September 2, 1983.
*1071 Bruce R. Kaster, of McClellan, Kaster & Vostrejs, P.A., Ocala, for appellant.
Martin J. Mickler, of Bullock, Sharp, Childs, Mickler & Cohen, P.A., for appellees Neisner Bros., Inc., and Commercial Union Ins. Co.
ERVIN, Chief Judge.
The claimant appeals the final order of the deputy commissioner which denies her claim for permanent total disability benefits (PTD) and future medical benefits, and, as to the TTD benefits actually awarded, calculates her average weekly wage (AWW) as $100.65. She argues that the findings of the deputy commissioner are contradictory, confusing, and not in accordance with the evidence. We affirm on the denial of future medical benefits and reverse and remand on the other points.
*1072 On October 14, 1977, Reynolds suffered an injury to the thoracic area of her back, when she slipped on a freshly waxed floor while working as a sales clerk at the employer's store. As a result of the injury, she received temporary total disability benefits (TTD) until February 20, 1978, when she was released by Dr. Marsh. She was also treated by Dr. Whittaker, who saw her on only two occasions, April 6, 1978 and January 2, 1979. He determined that she had sustained a compression fracture in the thoracic spine caused by the accident, with a 5% permanent physical impairment. He opined that she had reached maximum medical improvement (MMI) on April 6, 1978 and that she was then able to work. Although Reynolds had been working thirty-seven and a half hours per week before the accident at $2.65 per hour, she began her work at twenty hours per week upon her return and eventually increased her time to thirty hours per week at $3.70 per hour, which she maintained until October 11, 1981. Reynolds claimed that on that date she was unable to straighten up after bending to pick up a piece of paper at home. She attributed the October 11, 1981 back problem to repeated trauma that aggravated her October 14, 1977 back injury, amounting to a new accident for which she sought compensation, sustained during the moving of merchandise at the store during August and September of 1981, and more specifically while moving a heavy rack of clothes in August 1981.
Dr. Freed treated Reynolds for the back problem on three occasions, October 27, 1981, November 17, 1981 and December 11, 1981. He testified in a deposition that his examination of Reynolds revealed prior back injury, including a compression fracture of the lumbar spine which he estimated was a result of the 1977 accident. He gave his opinion that she had a permanent physical impairment of 8%, and that her period of TTD was from October 27 until December 11, 1981, when he felt she was able to return to work with limitations on heavy lifting, bending, pulling and pushing. By later deposition, however, Dr. Freed modified in part his diagnosis as he had since become aware of Dr. Whittaker's medical reports concerning Reynolds' back problems. Dr. Freed had not previously been aware of the compression fracture of the thoracic spine, but upon learning of it, he gave his opinion that such fracture stemmed from the 1977 accident and that the compression fracture to her lumbar spine was caused by the incident in August 1981, while she was pushing the heavy rack of clothes. Based on his subsequent analysis of her condition, he gave her a permanent impairment rating of 12% to the body as a whole based on the multiple compression fractures, but his opinion that she was able to work with some limitations as of December 11, 1981 had not changed.
The deputy commissioner's order found that Reynolds had previously, on October 14, 1977, suffered a compensable accident, for which she had received compensation and medical benefits. The testimonies of Drs. Whittaker and Freed were taken into consideration by the deputy and the order found their testimonies to be in conflict with regard to her impairment. The deputy accepted only the testimony of Dr. Whittaker, as he was the treating physician, and was therefore in a better position to make the determination of her impairment. Then, purportedly on the basis of Dr. Whittaker's medical testimony, the deputy commissioner determined that in August 1981, Reynolds suffered a temporary exacerbation of her pre-existing condition which resulted from the 1977 accident, and further, that she reached MMI on December 11, 1981, with a return to her pre-injury status. The order awarded her TTD benefits from October 27 through December 11, 1981, based on an AWW of $100.65, but found she was neither entitled to medical expenses, pursuant to section 440.13(1), Florida Statutes, nor to permanent and total disability.
On appeal, Reynolds asserts that the order is confusing and contradictory in that the findings are not supported by the evidence. We recognize it is the deputy commissioner's function to determine credibility and resolve conflicts in the evidence, and he may accept the testimony of one *1073 physician over that of another. Furthermore, the deputy need only make such findings of ultimate facts upon which he relies, as they are sufficient justification to provide the basis for an award. See Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865 (Fla. 1st DCA 1980). Upon review of the testimony and the order, we cannot agree with the deputy that the testimonies of Drs. Whittaker and Freed are in conflict. To the contrary, they appear to be consistent as far as they go. Dr. Freed's diagnosis, as modified in light of Dr. Whittaker's medical records, is in agreement with Dr. Whittaker's diagnosis that Reynolds' compression fracture of the thoracic spine stems from the 1977 accident. The variance in their permanent impairment ratings is attributable to the fact that Dr. Whittaker's last examination of Reynolds was on January 2, 1979, and he admitted that he consequently was unable to give any opinion as to her condition at any time in 1981. Dr. Freed's impairment rating was based on his examination revealing two compression fractures: a fracture in the thoracic spine of which Dr. Whittaker had diagnosed, and in the lumbar spine of which, Dr. Whittaker had been unaware. Even if we were to accept the deputy's finding that the testimonies are in conflict, the result of our acceptance of Dr. Whittaker's testimony to the exclusion of Dr. Freed's testimony would be a lack of medical evidence to support other findings in the order. No medical testimony other than Dr. Freed's appears in the record relating to Reynolds' 1981 impairment. The order, moreover, finds that in August 1981 she suffered a temporary exacerbation of her pre-existing condition; that her MMI was December 11, 1981, which formed the termination date of the award of TTD benefits. Dr. Whittaker's testimony, relied upon by the deputy, certainly could not provide the foundation for such findings. We find that the inconsistencies and inaccuracies in the order preclude meaningful appellate review, and, as the deputy's decision regarding Reynolds' entitlement to PTD benefits was the result of the conflicting findings, we decline to reach the issue of her entitlement to PTD benefits. See Florida Power & Light Co. v. Monks, 407 So.2d 1081 (Fla. 1st DCA 1982). Rather, we remand for further proceedings, and direct the deputy to clarify his findings, upon which Reynolds' entitlement to benefits can be determined in accordance with the evidence, including claimant's age, education and physical limitations.
We affirm the deputy's denial of future medical benefits pursuant to section 440.13(1), Florida Statutes, as it is supported by the evidence. The record does not contain testimony of any residual need for future medical treatment once claimant reached MMI with directions that she return to work with limitations. See Bay Cadillac, Inc. v. Ingram, 384 So.2d 913 (Fla. 1st DCA 1980). Accordingly, we affirm on this point.
Both appellant and appellee agree that Reynolds' AWW was erroneously calculated by the deputy. The AWW amount stated in the order was apparently derived from her earnings as of the time of the 1977 accident. The parties agree that her AWW properly should amount to no less than $111, based on her 30-hour weekly wage at $3.70 per hour at the time she terminated work in October, 1981. On this point, we remand for recalculation of Reynolds' AWW. The record discloses that Reynolds had been entitled to health insurance paid by the employer and we direct the deputy also to include the value of such fringe benefits in Reynolds' AWW. See Constanzer v. Sta Rite and Travelers Insurance Company, 432 So.2d 775 (Fla. 1st DCA 1983).
REVERSED and REMANDED for further proceedings consistent with this opinion.
MILLS and LARRY G. SMITH, JJ., concur.