468 So.2d 1027 (1985)
EXECUTIVE CAR AND TRUCK LEASING, INC., Edythe Hopewell, As Personal Representative of the Estate of Robert D. Mendelsohn, Industrial Indemnity Company, Commercial Union Insurance Company, Action Bolt & Tool Company, and Allstate Insurance Company, Appellants,
v.
Alberta DeSerio, et al., Appellees,
EXECUTIVE CAR AND TRUCK LEASING, INC., Edythe Hopewell, As Personal Representative of the Estate of Robert D. Mendelsohn, Deceased, and Industrial Indemnity Company, Appellants,
v.
Alberta DeSERIO, et al., Appellees.
Nos. 84-1018, 84-1980.
District Court of Appeal of Florida, Fourth District.
April 24, 1985.
Rehearing and Certification Denied May 29, 1985.
*1028 Brian Powers of Powers & Flanagan, Lake Worth, and Jane Kreusler-Walsh and Larry Klein, of Klein & Beranek, P.A., West Palm Beach, for appellants, Executive Car and Truck Leasing, Edythe Hopewell, and Indus. Indem. Co.
Eric A. Peterson of Peterson & Fogarty, West Palm Beach, and Richard A. Sherman of Law Offices of Richard A. Sherman, Fort Lauderdale, for appellants, Commercial Union Ins. Co. and Action Bolt & Tool Co.
Michael B. Davis of Walton Lantaff Schroeder & Carson, West Palm Beach, for appellant, Allstate.
Anderson & Anderson, Fort Lauderdale, and Dougald D. McMillan, Dallas, Texas, for appellee, DeSerio.
BARKETT, Judge.
We affirm appellee DeSerio's judgment for damages in the amount of $1,200,000 in this negligence action arising out of an automobile collision. In this appeal we have determined that a clinical psychologist need not be a medical doctor to testify to the existence of organic brain damage, and that medical testimony is not always necessary to show causation of such brain damage.
At trial, there was extensive testimony concerning the nature and extent of DeSerio's injuries. Most of the controversy on appeal, however, concerns only the evidence tending to show that DeSerio had sustained organic brain damage as a result of the accident.
Appellants contend that the trial court erred by permitting DeSerio's expert, a clinical psychologist who was not a medical doctor, to testify to the existence of organic brain damage. This issue has not been considered squarely in Florida.
At trial, the neurosurgeon who testified on behalf of DeSerio said that although he could not detect any permanent organic brain damage after a "gross neurological examination," certain physical symptoms led him to refer DeSerio to a clinical psychologist, for psychological testing. The neurosurgeon indicated that he commonly relied upon the findings of the clinical psychologist. The psychologist, Dr. Bessette, testified that, based upon the results of a battery of psychological tests[1] commonly used by psychologists in identifying organic brain damage, DeSerio had sustained organic brain damage.
In general, it is the trial court's responsibility to determine the range of subjects on which an expert witness may testify, and this determination will not be disturbed on appeal absent a clear showing of abuse of discretion. E.g., Guy v. Kight, 431 So.2d 653 (Fla. 5th DCA), pet. for rev. den., 440 So.2d 352 (Fla. 1983). See also § 90.702, Fla. Stat. (1983). Expert testimony may be given only if a witness is "skilled in the subject matter of the inquiry." Kelly v. Kinsey, 362 So.2d 402, 403 (Fla. 1st DCA 1978). See Husky Industries, Inc. v. Black, 434 So.2d 988 (Fla. 4th DCA 1983). That determination, however, should be based on the overall qualifications of the expert and not solely on an academic degree. In Jenkins v. United States, 113 U.S.App.D.C. 300, 307 F.2d 637 (D.C. Cir.1962) (en banc) the court said:
The determination of a psychologist's competence to render an expert opinion based on his findings as to the presence or absence of mental disease or defect must depend upon the nature and extent of his knowledge. It does not depend upon his claim to the title "psychologist." And that determination ... must be left in each case to the traditional discretion of the trial court subject to appellate review... . [T]he lack of a medical degree, and the lesser degree of responsibility for patient care . .. are not automatic disqualifications. Where relevant, these matters may be shown to affect the weight of their testimony... .
307 F.2d at 645-646 (footnotes omitted).
In Ross v. State, 386 So.2d 1191 (Fla. 1980), our supreme court recognized *1029 that a psychologist is competent to testify to a person's mental condition. The psychologist in Ross testified that although the defendant may have had organic brain damage, the possible existence of this brain damage did not affect the psychologist's testimony regarding the defendant's competency to stand trial. We do not find Ross controlling in this situation, but note that the court credited a psychologist's testimony concerning the manifestations of organic brain damage.
In Reese v. Naylor, 222 So.2d 487 (Fla. 1st DCA 1969), a negligence action in which the plaintiff alleged personal injuries, the court allowed a clinical psychologist to testify, based on psychological testing, to the plaintiff's mental condition. The testimony apparently concerned the possibility that the plaintiff was schizophrenic. The psychologist testified that schizophrenia was viewed as either a medical or psychological condition, or both. The psychologist in Reese also testified, as did Dr. Bessette here, that psychiatrists commonly ask for the consultative services of psychologists in diagnosing mental disorders by means of testing techniques.
We find that while neither Ross v. State nor Reese v. Naylor specifically permits the type of testimony at issue in this case, neither case forbids it. Indeed, in both cases the court relied upon the testimony of clinical psychologists in evaluating mental conditions, and both allowed such persons to testify in connection with organic brain dysfunctions.
We find compelling the logic of Simmons v. Mullen, 231 Pa.Super. 199, 331 A.2d 892 (1974). In Simmons, the court allowed a clinical psychologist to testify to the existence of organic brain damage, and noted that "[w]hen dealing with the brain, consultation with non-medical practitioners may be not only desirable but necessary." Id. 331 A.2d at 898. At trial, a neurosurgeon had testified that he relied upon the clinical psychologist to detect, through psychological testing, possible organic disturbances to brain functions. The court concluded that to adopt the view that psychologists are not competent to testify to the existence of organic brain dysfunctions "would be to ignore present medical and psychological practice." Id. 331 A.2d at 899. These same considerations are applicable in the instant case.
A number of other jurisdictions allow psychologists to testify to the existence of organic brain damage. E.g., Stock v. Massachusetts Hospital School, 392 Mass. 205, 467 N.E.2d 448 (1984); Virginia Department of Corrections v. Clark, 318 S.E.2d 399 (Va. 1984); Chambers v. State, 250 Ga. 856, 302 S.E.2d 86 (1983); State v. Hall, 136 Ariz. 219, 665 P.2d 101 (1983); Kinsey v. Kolber, 103 Ill. App.3d 933, 59 Ill.Dec. 559, 431 N.E.2d 1316 (1982); Litton v. Home Indemnity Co., 391 So.2d 541 (La. App.3d Cir.1980). See also Martin v. State, 455 So.2d 370 (Fla. 1984); Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 855, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979) (noting that psychologists and psychiatrists were allowed to testify to brain damage of defendant in death penalty case).
We hold, therefore, that the trial court did not abuse its discretion in allowing a clinical psychologist who was not a medical doctor to testify to the existence of organic brain damage. A clinical psychologist's lack of a medical degree properly can be raised during cross-examination, or during closing argument, to affect the weight of such testimony. See Jenkins v. United States, 113 U.S.App.D.C. 300, 307 F.2d 637, 646 (1962).
As to causation, appellants correctly contend that the trial court erred in permitting Dr. Bessette to testify that the accident in question caused the organic brain damage. Because Dr. Bessette is not a medical doctor, we hold that the trial court should not have allowed him to testify to the physical cause of brain damage. Simmons v. Mullen, 331 A.2d at 899-900. Cf. Kravinsky v. Glover, 263 Pa.Super. 8, 396 A.2d 1349 (1979) (psychologist may testify as expert to causation of psychological phobia). See also Kriewitz v. Savoy Heating and Air Conditioning Co., 396 So.2d 49 *1030 (Ala. 1981). Medical testimony, however, is not always necessary to show causation between an occurrence and the damages alleged to be caused by that occurrence. E.g., Clark v. Choctawhatchee Electric Co-operative, 107 So.2d 609 (Fla. 1958). In Clark, our supreme court held that medical testimony was not necessary to support a verdict in favor of a plaintiff alleging personal injury. The court stated that when an injured person was free of the symptoms at issue immediately before a damaging occurrence, and when the injury followed that occurrence very closely, "the conclusion of relationship between them [is] inescapable." Id. at 612. See Lyng v. Rao, 72 So.2d 53 (Fla. 1954) (causation inferred when plaintiff struck by lightning, and disabilities that did not preexist striking by lightning immediately appeared).
Similarly, in Simmons v. Mullen, 231 Pa.Super. 199, 331 A.2d 892 (1974), the court held that expert testimony was not required to establish causation between an accident and organic brain damage alleged to be caused by that accident. The court found that the injury was the immediate and direct, or natural and probable, result of the accident.
In the instant case, DeSerio received severe head injuries at the time of the accident, and was in a coma when she was taken to the hospital. Her neurosurgeon treated her for debilitating headaches, leftsided numbness, unsteadiness, and difficulty with her memory. He testified that she had all the symptoms of a severe concussion and probable contusion of the right cerebrum causing hemiparesis and sensory disturbances on her left side. Her recovery was slow and incomplete, and although the indications of brain damage seemed to clear up on gross neurological examination, they persisted symptomatically and DeSerio still appeared to have sufficient brain damage to disable her and cause her to feel unsteady and unsafe on her own. It was for these reasons that the neurosurgeon referred DeSerio to Dr. Bessette. DeSerio and others testified that she had none of these problems prior to the automobile accident in question, and that these problems occurred immediately and continually after the accident. The inference that the brain damage was traceable back to the collision is warranted under the facts of this case where the disability followed the accident in an obvious sequence. Accordingly, we find that Dr. Bessette's improper testimony was not necessary and that it constituted harmless error. See § 59.041, Fla. Stat. (1983); Clark v. Choctawatchee Electric Co-operative, 107 So.2d 609 (Fla. 1958); Lyng v. Rao, 72 So.2d 53 (Fla. 1954); Simmons v. Mullen, 231 Pa.Super. 199, 331 A.2d 892 (1974).
Appellants' other points on appeal do not require discussion.
AFFIRMED.
LETTS and GLICKSTEIN, JJ., concur.
NOTES
[1] Included, for example, was the prestigious Reitan Battery.