501 So.2d 1326 (1986)
ORLANDO PRECAST PRODUCTS, and Alexis Insurance Company, Appellants,
v.
Alan CIOFALO, Appellee.
McKenzie Tank Lines and Hewitt, Coleman & Associates, Appellants,
v.
Alan Ciofalo, Orlando Precast Products, and Alexis Insurance Company, Appellees.
Nos. BL-312, BL-314.
District Court of Appeal of Florida, First District.
December 31, 1986.
*1327 Donna L. Bergh of Walker, Miller & Ketcham, Orlando, for appellants/appellees, Orlando Precast Products & Alexis Ins. Co.
Robert G. Brightman of B.C. Pyle, P.A., Orlando, for appellants, McKenzie Tank Lines and Hewitt, Coleman & Associates.
Herbert A. Langston, Jr., of Langston & Hess, P.A., Orlando, for appellee, Alan Ciofalo.
SMITH, Judge.
The employers/carriers (E/C No. 1 and E/C No. 2) appeal the deputy commissioner's final order awarding claimant disability benefits and related expenses.
Claimant's first back injury occurred on May 12, 1983, when he lifted a window sill weighing about 200 pounds while working for E/C No. 1 (Orlando Precast). He was treated by Dr. Maleki for the back pain and by a physical therapist for both neck and back pain. Dr. Maleki opined that claimant reached maximum medical improvement (MMI) with no permanent physical impairment (PPI) on June 10, 1983.
Following the first industrial accident, claimant resigned from his job with E/C No. 1 and worked for several other employers before eventually being hired by E/C No. 2 (McKenzie Tank Lines). During the interim, he continued to have dull pain and stiffness in his back and neck. In 1984 and 1985, claimant was treated by two different chiropractors for a total of 13 visits for his neck and back pain.
When claimant was hired by E/C No. 2, he told his supervisor about the prior industrial accident. E/C No. 2 hired claimant to *1328 drive an 18-wheeler tractor-trailer about 400 miles each day. On a daily basis, claimant had to lift heavy hoses to fill and empty the tanker with petroleum products. While driving, claimant continually bounced around in the cab and had to twist and turn his body to enter and exit the cab.
On May 22, 1985, while attempting to load his truck, claimant had difficulty connecting the rubber hose to the fuel tank, because the new spring levers recently installed were too tight. Claimant had to jerk the hose, jam it into the tank, and then lock it into place. When this happened, he felt he had strained his back, but he had to sharp pains. That night, his neck and back pain kept him from sleeping. The following day his back and neck were more stiff than usual. Later in the day, while attempting to exit the truck, he experienced very sharp stabbing pains in his lower back just like the pain he had experienced during the first industrial accident. Claimant worked for the remainder of the day, at the end of which he told his supervisor he had hurt his back and needed to see a doctor.
According to the testimony of claimant, when he informed the supervisor of his back injury, the supervisor suggested that the back pain was triggered by claimant's industrial accident with E/C No. 1, rather than being related to his job with E/C No. 2. The supervisor presented a different version of the conversation, however. He testified that claimant told him that while he was driving the truck, his back began hurting him due to his prior industrial accident with E/C No. 1, and that he had to file a claim against the first employer within the next couple of weeks. The supervisor also stated that he called his home office for advice and was told not to file a workers' compensation report on claimant because of claimant's statement that his back pain was related to his prior industrial injury with E/C No. 1.
Following the second incident, claimant was seen by three physicians. Dr. Maleki testified that he saw claimant in May 1985 because of back pain caused from prolonged sitting in the truck. It was his opinion that any normal activity, such as lifting and moving furniture at home or driving the family car long distances, could have aggravated claimant's pre-existing arthritic condition. Dr. Qaiyumi also treated claimant. It was her opinion that both accidents aggravated claimant's pre-existing arthritic condition. She did not think claimant had reached MMI but gave him a PPI rating of 10-15% of both his back and neck, which she attributed to the two industrial accidents. At the request of claimant's attorney, Dr. Zilioli evaluated claimant. It was his opinion that the first industrial accident brought claimant's long-standing degenerative changes in the neck and back into clinical significance. He did not think claimant had reached MMI but gave him a PPI rating based on the AMA Guides of 5-10% of his neck and 5% of his lower back, 1% of which he attributed to the first industrial accident. On cross-examination, Dr. Zilioli conceded that his recommended treatment might eliminate the symptoms which he felt indicated a permanent physical impairment and that he could not say within reasonable medical probability that the 1% of the 5% PPI was attributable to either accident.
E/C No. 1 contend that the deputy commissioner erred as a matter of law in finding that claimant suffered PPI as a result of his industrial accident on May 12, 1983. We agree but hold that the error was harmless in light of the circumstances of this case. It is the deputy's duty to determine the credibility of witnesses and to resolve conflicts in the evidence, and he may accept the testimony of one physician over that of another. Reynolds v. Neisner Brothers, Inc., 436 So.2d 1070 (Fla. 1st DCA 1983); Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865 (Fla. 1st DCA 1980). Section 440.02(16), Florida Statutes (1985), defines permanent impairment as follows:
[It] means any anatomic or functional abnormality or loss, existing after the date of maximum medical improvement, which results from the injury.
In the instant case, the deputy rejected Dr. Maleki's statement that claimant had *1329 reached MMI as to the first accident, because claimant continued to experience pain upon physical exertion, for which he sought treatment from two chiropractors. As to the second accident, although the other two doctors opined that claimant had suffered PPI from both accidents, they also stated that claimant had not reached MMI. Thus, the deputy's finding of permanent physical impairment was premature. The error was harmless, however, since the deputy did not make a finding on the percentage of claimant's PPI nor award any permanent disability benefits. In fact, the deputy ordered E/C No. 2 to continue paying TPD benefits until claimant reached MMI.
E/C No. 2 contend that the deputy erred in finding that claimant sustained a compensable accident or incident in May 1985. We disagree and affirm. The deputy herein found that claimant injured his neck and back on May 22, 1985, when he lifted a heavy rubber hose to fill the truck with petroleum products, and he also injured his neck and back as a result of repeated trauma as evidenced by prolonged sitting and bouncing in the truck and by the handling of heavy hoses to fill and empty the tanker. In making these findings, the deputy accepted the testimony of claimant, Dr. Qaiyumi and Dr. Zilioli and rejected the conflicting testimony of the supervisor and Dr. Maleki and resolved all ambiguities in claimant's testimony in favor of a finding of compensability. The deputy's findings will be sustained if any view of the evidence and its permissible inferences will permit it. Gomez v. Neckwear, 424 So.2d 106 (Fla. 1st DCA 1982).
When an employee has a pre-existing condition, before his injury can be found compensable, the employment conditions must expose him to a greater risk of injury than that to which he is exposed in his nonemployment life. A.G. Carriers, Inc. v. Carroll, 496 So.2d 953 (Fla. 1st DCA 1986); Bison Co. v. Shubert, 494 So.2d 253 (Fla. 1st DCA 1986). In the instant case, the deputy found that the repeated trauma from the straining while lifting the hose and from sitting and bouncing and getting in and out of the Mack truck all constituted hazards which were greater than that to which the general public is exposed. Although the deputy articulated his finding in terms primarily pertinent to the legal test for compensability in exposure or repeated trauma cases, see, Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980), we hold that the factual findings and legal conclusions of the deputy are sufficient to meet the test of compensability on the theory of aggravation of the claimant's pre-existing condition. Claimant herein worked as a truck driver for E/C No. 2 for about six months prior to injuring his neck and back. His job involved on a daily basis prolonged sitting and bouncing while driving, twisting, turning and lifting the body to enter and exit the truck, and lifting heavy rubber hoses to fill and empty the tanker. Drs. Qaiyumi and Zilioli testified that claimant aggravated his pre-existing arthritic condition. The amount of exertion required by claimant's job was manifestly greater than that to which he was exposed in his nonworking life.
E/C No. 2 also contend that the deputy erred in finding that claimant gave sufficient statutory notice to his employer of his injury. We disagree and affirm. To support his finding, the deputy accepted the testimony of claimant that he had told his supervisor on May 23, 1985, that he had hurt his back while driving the employer's truck and that the supervisor suggested to claimant that he should process his workers' compensation claim against E/C No. 1. The deputy excused claimant's statement that he thought his neck and back injury were due to his first accident because claimant was unaware that repeated trauma or strain from jerking the rubber hose constituted an "accident" within the meaning of the workers' compensation law. The deputy also relied on the supervisor's testimony that he called his home office for advice as to the necessity for filing an employer's workers' compensation report on claimant. We hold that the deputy did *1330 not err in concluding that these facts were sufficient to have put the employer on notice of the injury pursuant to the provisions of section 440.185(1)(a), Florida Statutes (1985). Southern Culvert Pipe v. Oswalt, 382 So.2d 1365 (Fla. 1st DCA 1980).
AFFIRMED.
ZEHMER and WIGGINTON, JJ., concur.