538 So.2d 1333 (1989)
Dean C. HAAS and Lumbermans Mutual Insurance Co., Appellants,
v.
Patricia SEEKELL, Appellee.
No. 87-875.
District Court of Appeal of Florida, First District.
February 17, 1989.
*1334 Wendell J. Kiser and Steven S. Eichenblatt of Zimmerman, Shuffield, Kiser & Sutcliffe, Orlando, for appellants.
Douglas H. Glicken, Orlando, for appellee.
PER CURIAM.
The employer and carrier appeal from the deputy commissioner's final order awarding claimant temporary total disability (TTD), payment for psychologist's treatment, attorney's fees and costs. We affirm in part and reverse in part.
Five issues have been raised for our consideration, three of which merit discussion: (1) whether the deputy's finding that the claimant sustained a compensable injury to her right hip as a result of her industrial accident is supported by competent substantial evidence; (2) whether the psychologist was competent to testify regarding the causal relationship between the claimant's industrial accident and the "organic personality syndrome" diagnosed by the psychologist, and (3) whether the deputy's award of attorney's fees to claimant was proper.
On November 29, 1984, while working at a building construction site, claimant suffered a compensable industrial accident when a truss fell on top of her head and body, knocking her to the concrete floor and rendering her unconscious. Upon her initial treatment, she was found to have sustained: (1) a skull fracture; (2) laceration of the right ear, and (3) post-traumatic vertigo.
The deputy commissioner found the claimant temporarily and totally disabled from November 29, 1984 to the present. The deputy based this finding on the testimony of claimant and Dr. George Lindenfeld, claimant's treating psychologist. Claimant testified that subsequent to the industrial accident she had continuous problems with her balance, falling on many occasions; experienced constant problems with her right hip, neck and back; and experienced continuing depression, anxiety, memory loss and disorientation. It was Dr. Lindenfeld's opinion that, as a result of her industrial accident, claimant was suffering from "organic personality syndrome" *1335 and consequently was unable to work from November 29, 1984 until the present. The deputy found that Dr. Lindenfeld was competent to testify as to his diagnosis of claimant's mental condition and the causal connection between that condition and the industrial accident.
The deputy also found that the claimant's right hip problems were causally related to the industrial accident. The deputy found that there was a sufficient combination of lay testimony and medical evidence to provide competent substantial evidence of a causal relationship.
Although there were inconsistencies in the testimony of claimant, as well as conflicts in the testimony between Doctors Hoff (neurosurgeon) and Matthews (orthopedist), the law is clear that it is the deputy's duty to determine the credibility of the witnesses and to resolve conflicts in the evidence, as well as to accept the testimony of one physician over that of another. See Orlando Precast Prods. v. Ciofalo, 501 So.2d 1326, 1328 (Fla. 1st DCA 1986); Reynolds v. Neisner Bros., Inc., 436 So.2d 1070, 1072-73 (Fla. 1st DCA 1983); Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865 (Fla. 1st DCA 1980).
Notwithstanding the opinion of Dr. Matthews which indicated a degenerative arthritic problem of the right hip preexisted the accident, and his conclusion of a lack of causal relationship between the accident and the hip problem, such testimony does not preclude, in view of all of the evidence in the case, an aggravation by the accident of the preexisting arthritic condition. When Dr. Matthews was asked whether the work-related accident could have logically aggravated the condition, he responded that it was possible, but he would like to know what type of injury it was  whether it was a sprain, contusion or otherwise. In addition to the history taken from claimant by Dr. Hoff on December 11, 1984, twelve days following the injury,[1] reflecting that she might have either cracked her hip or suffered "a nasty strain," the deputy's findings were supported by the testimony of Dr. Hellinger, a neurosurgeon, who diagnosed claimant's condition as traumatic labyrinthitis, multiple strains and bruises, fracture of her left toes and a bruise of her upper left extremity.
Thus, there was evidence in the record from which the deputy could lawfully infer  based upon not only claimant's testimony but a combination of both doctors' testimony, particularly Dr. Hellinger's, stating claimant had suffered multiple strains and bruises  that claimant had suffered a strain to her right hip. Again, in answer to the question why the claimant began to complain of pain in her right hip eleven or twelve days following the accident, Dr. Matthews responded that he considered that the pain in her right hip was destined, at some time, to become symptomatic, but why such pain occurred at that specific time, he could not honestly say. Highlighting the uncertainty of his medical opinion, he conceded that perhaps the judge ought to make the decision regarding whether the industrial accident aggravated the condition. The deputy, in fact, specifically noted that Dr. Matthews, who saw claimant only once, had stated that he would leave the decision of logical causation to the court.
Finally, although Dr. Hoff is a neurosurgeon and not an orthopedist, as is Dr. Matthews, Dr. Hoff did not specifically state that he would defer to the opinion of Dr. Matthews regarding whether claimant's arthritic condition was aggravated by the industrial accident, notwithstanding his referral of claimant to Dr. Matthews for an orthopedic examination.
Our cases upholding the finding of the deputy commissioner regarding a compensation claim, on the basis of any competent, substantial evidence in support thereof, simply echo the following rule iterated by Professor Larson: "Whether the employment *1336 aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by the commission based on any medical testimony ... will not be disturbed on appeal." 1 A. Larson, The Law of Workmen's Compensation § 12.25, at 3-348.67-.68 (1985) (emphasis added).
In the present case, there was a combination of both medical and lay testimony supporting the deputy's determination of the causal connection between claimant's orthopedic disability and her work-related accident. Because the claimant adequately established that her preexisting condition was aggravated by the industrial accident, the deputy's decision as to the causal relationship will not be disturbed.
While the deputy relied in part on claimant's hip problem in making his findings of temporary total disability, he also relied upon claimant's disabling mental condition and its causal connection to the accident for which there is competent substantial evidence.
The record establishes that Dr. Lindenfeld diagnosed claimant as suffering from "organic personality syndrome" and specifically testified that this condition was causally related to the claimant's industrial accident. Appellant objects to the admission of such testimony as being in violation of Executive Car and Truck Leasing, Inc. v. DeSerio, 468 So.2d 1027 (Fla. 4th DCA 1985), which held that although a psychologist may testify to the "existence" of organic brain damage, the psychologist may not testify that the accident caused the organic brain damage. Id. at 1029.
Appellee responds that the psychologist in this case was not testifying to the physical cause of brain damage, in violation of DeSerio. Rather, Dr. Lindenfeld was testifying to the causal relationship between the claimant's psychological condition and her injuries from the industrial accident.
This court has held that a psychologist is competent to render his opinion regarding the causal relationship between a claimant's mental disorder or condition and injuries sustained in a compensable accident. Westinghouse Electric Corp. v. Lawrence, 488 So.2d 623 (Fla. 1st DCA 1986). See also Kravinsky v. Glover, 263 Pa.Super. 8, 396 A.2d 1349 (1979) (psychologist may testify as expert to causation of psychological phobia).
However, the nature of the diagnosis in this case poses a problem. "Organic personality syndrome" is predicated on the existence of organic brain damage. As noted by Dr. Lindenfeld in his report:
The essential feature is a marked change in personality that is due to a specific organic factor. The clinical syndrome in a given individual depends principally on the nature and localization of the head injury. (e.s.)
And in explaining the "psychological" nature of the diagnosis:
It is a psychological diagnosis that is consequent to some kind of organic change within the brain function or structure... . (e.s.)
It is true that the DeSerio court held that "a clinical psychologist need not be a medical doctor to testify to the existence of organic brain damage." (e.s.), DeSerio, 468 So.2d at 1028. However, the nature of the diagnosis in this case required the psychologist to go beyond the DeSerio limitation. By testifying that the accident caused the organic personality syndrome, Dr. Lindenfeld was, in practical effect, testifying that the accident caused some type of brain damage.
However, under the facts of this case, as in DeSerio, medical testimony was not necessary to establish causation between the accident and any organic brain damage. The logical sequence of events in this case establishes the natural and probable causal connection between the industrial accident and some type of brain damage. At the time of the accident, claimant received a severe head injury and was unconscious when she was taken to the hospital. Her neurosurgeon has treated her for *1337 headaches and vertigo. Claimant has constantly been complaining about dizziness ever since the accident. Claimant testified that she did not have this condition before the accident. Claimant also testified that ever since the accident she has had problems with her memory. Although upon neurological examination the indications of claimant's head injury have seemed to clear up, these indications still persist symptomatically and claimant still suffers from dizziness. These facts indicate the existence of some type of brain damage which is traceable back to the accident where claimant was struck in the head by the truss. Because it is apparent that some type of brain damage was caused by the accident, Dr. Lindenfeld's improper testimony regarding the causal connection between claimant's "organic personality syndrome" and the industrial accident was unnecessary and constituted harmless error. See DeSerio.
As to the third issue, we agree with appellant that the deputy's award of attorney's fees was improper. The deputy's finding as to the issue of attorney's fees is as follows:
14. Claimant's attorney has rendered valuable services to his client and is entitled to a reasonable attorney's fee to be paid by the Employer/Carrier. It is clear that the Employer/Carrier willfully ignored Claimant's request for psychological care and treatment. Further, no evidence was presented that showed that the Employer/Carrier even attempted to investigate Claimant's need for said treatment. Rather, the Employer/Carrier controverted payment of Dr. Lindenfeld even though they were in receipt of his psychological report that clearly sets out that as a result of her industrial accident, Claimant was in need of psychological care and treatment.
Entitlement to attorney's fees based on bad faith under Section 440.34(3)(b), Florida Statutes (1983)[2] must be specifically litigated as a separate issue at the hearing with factual evidence presented going directly to that issue. Charles Sales Corp. v. Filmore, 518 So.2d 304 (Fla. 1st DCA 1987); Rivers v. SCA Services of Florida, Inc., 465 So.2d 634 (Fla. 1st DCA 1985); Veterans Septic Tank Service v. Wallace, 445 So.2d 389 (Fla. 1st DCA 1984). In the present case, entitlement to attorney's fees based on bad faith was not specifically litigated as a separate issue at the hearing. Although claimant had made a claim for attorney's fees from the outset, at no time did claimant make explicit that the claim was grounded on bad faith. There is no indication from the record that claimant ever asserted the employer/carrier's bad faith handling of the claim as the basis of his demand for attorney's fees. Consequently, there was no forthright assertions of bad faith, nor any meaningful litigation on that subject at the hearing before the deputy. See Turnberry Isle Country Club v. Reyes, 510 So.2d 1012 (Fla. 1st DCA 1987) and Closet Maid Corporation v. Wilson, 429 So.2d 419 (Fla. 1st DCA 1983). Accordingly, the deputy's award of attorney's fees must be reversed *1338 and the case remanded with directions to conduct a hearing on the question of claimant's entitlement to attorney's fees.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
ERVIN, JOANOS and NIMMONS, JJ., concur.
NOTES
[1] The history taken by Dr. Hoff reflected that the claimant was experiencing "lots of trouble with the right hip. She gets pains in the hamstring; she cannot cross it over like [sic] the left and either she might have cracked in [sic] the hip, or else she had a nasty strain here."
[2] Attorney's fees; costs; penalty for violations. 
(3) If the claimant should prevail in any proceedings before a deputy commissioner or court, there shall be taxes against the employer the reasonable costs of such proceedings, not to include the attorney's fees of the claimant. A claimant shall be responsible for the payment of his own attorney's fees, except that a claimant shall be entitled to recover a reasonable attorney's fee from a carrier or employer:
* * * * * *
(b) In cases in which the deputy commissioner issues an order finding that a carrier has acted in bad faith with regard to handling an injured worker's claim and the injured worker has suffered economic loss. For the purposes of this paragraph, the term "bad faith" means conduct by the carrier in the handling of a claim which amounts to fraud; malice; oppression; or willful, wanton, or reckless disregard of the rights of the claimant. Any determination of bad faith shall be made by the deputy commissioner through a separate factfinding proceeding. The deputy commissioner shall issue a separate order which shall expressly state the specific findings of fact upon which the determination of bad faith is based... . (e.s.)