592 So.2d 276 (1991)
ARAND CONSTRUCTION CO., and Travelers Insurance Co., Appellants,
v.
Duford DYER, Appellee.
No. 91-250.
District Court of Appeal of Florida, First District.
December 13, 1991.
Rehearing Denied January 22, 1992.
*277 Margaret E. Sojourner of Frank & Brightman, Orlando, for appellants.
Robert A. Wohn, Jr. of Wohn & McKinley, P.A., Cocoa, for appellee.
MINER, Judge.
The question presented in this appeal of an order awarding workers' compensation benefits is whether competent substantial evidence supports a finding by the Judge of Compensation Claims (JCC) that appellee/claimant is permanently and totally disabled as the result of an industrial accident which occurred in 1980. Finding no such evidence in the record, we reverse.
On January 23, 1980, appellee/claimant, a 52-year-old man with an eighth grade education, was employed by appellant/employer, Arand Construction Co., doing rough carpentry. While putting a roof on a building, he reached over to lift a sheet of plywood, and "when I picked it up it felt like somebody just hit me right across the belt line with a hickory or something." Claimant was treated by Drs. Tessler and Caldwell for his low back injury. The parties stipulated to compensability and further stipulated that claimant reached MMI on December 31, 1985.
Although claimant was able to return to light duty with the employer shortly after the accident, his back problems forced him to stop working after approximately six weeks. He eventually found work in 1985 as a gas attendant, but repetitive bending and stooping forced him to leave after approximately one year. He then spent approximately six months doing light carpentry for another company but the employment ended when there was no more light work to be done. Claimant performed an unsuccessful job search and the employer/carrier (e/c) paid wage loss benefits through the date of the hearing in October 1990. In December of 1989, a claim was filed for permanent total disability benefits. The e/c took the position that the claimant was not PTD and that his current condition was not related to the January 1980 industrial accident.
Claimant testified that he had experienced problems with his low back prior to his 1980 industrial accident. He first had back problems in 1968 but there had been no problems for 6 to 10 years prior to his 1980 accident. Since the 1980 accident, claimant testified to having persistent back pain. Claimant's stiffness and soreness, which had been with him since the accident, did not go away for more than a few hours at a time. He testified that his pain permitted him to sit for no longer than 45 minutes, to stand for no longer than an hour, limited his walking and lifting, and would not permit repetitive kneeling or squatting. He testified that he could only *278 sleep 4 or 5 hours per night and had to lie down frequently during the day.
Dr. Richard Tessler, an orthopedic surgeon, testified by way of a 1981 deposition. He noted that claimant suffered from back problems since 1968 and that he first treated claimant for back problems in 1977, at which time he formulated a working diagnosis of sciatica which could have been caused by disc protrusion/degeneration or narrowing of the nerve canal.[1] An EMG performed in May 1980, which should have detected the nerve damage, was negative. This led Dr. Tessler to conclude that the nerve damage was only temporary. The following testimony was elicited concerning claimant's 1980 industrial accident:
[CLAIMANT'S ATTORNEY] In relating his injury of 1980 to his past, can you relate to me whether or not the 1980 accident or injury was some sort of a new incident or an aggravation of his old conditions?
[DR. TESSLER] I feel that since the patient presented to me in '77 with exactly the same signs that he presented to me in '80 and since he has had back troubles since 1968, that his condition in '80 is exactly as it was in '77, and I would be hard-pressed to say that this is a new condition. That is the first thing. Then the question is, is this an exacerbation of an old injury, and I would have to say that I cannot with reasonable medical certainty say that it is not. Does that make any sense, two negatives?
[CLAIMANT'S ATTORNEY] I will accept it.
[DR. TESSLER] Then I would say that it is an exacerbation of his old injury.
Dr. Tessler opined that the 1980 exacerbation was temporary, but also testified that claimant was permanently impaired. Dr. Tessler had not seen claimant since April 1980.
Dr. Jacques Caldwell, a rheumatologist and allergist, testified by way of depositions dated June 3, 1982, and July 11, 1990. When he first saw the claimant on June 11, 1981, approximately 18 months after the industrial accident, he initially diagnosed spinal stenosis. Dr. Caldwell explained that spinal stenosis involves an overgrowth of bone spurs on the facet-joints which narrow the openings for the nerve roots. The condition occurs with age, with the onset of arthritis, or due to injury. A CAT scan performed at this time confirmed spinal stenosis as well as "a little bit of a disc bulge." At his 1982 deposition, Dr. Caldwell was asked whether the condition could have been caused by the January 1980 industrial accident. The following exchange occurred:
[DR. CALDWELL] I think perhaps the X-ray changes would have developed over a much longer period of time, would be my guess. That would be my guess that it would develop over a long period of time, but that is not a solid, firm commitment, no.
[E/C's ATTORNEY] You could not say with any reasonable medical probability again that type of X-ray change you saw, specifically the overgrowth, did or did not occur in the period between January 23, 1980 and June 11, 1981, when you saw him?
[DR. CALDWELL] No, I can't say that. I cannot include or exclude that.
In his July 1990 deposition, Dr. Caldwell did not have claimant's records prior to 1984, and did not recollect his 1982 deposition testimony. He had been treating claimant with anti-inflammatory drugs, muscle relaxants and home exercise. He diagnosed claimant as having lumbar spondylosis, which the doctor defined as degenerative arthritis of the spine accompanied by hypertrophy of the bone; this condition could become symptomatic with a traumatic event. When asked directly concerning the cause of claimant's condition, Dr. Caldwell responded as follows:
[DR. CALDWELL] He's got inflammation in the joints, that caused his bony overgrowth. What brought the inflammation on, can be several  there's several *279 possibilities. One, it can come with normal aging process. Secondly, it can come by trauma or be aggravated by trauma. We just don't know. Sometimes infection can do it, but that's a rare cause in the spine.
[E/C's ATTORNEY] Do you have any opinion in this case as to what brought this about?
[DR. CALDWELL] No.
Claimant's attorney posed a hypothetical question in which Dr. Caldwell was asked to assume claimant's prior history of back pain and render an opinion within reasonable medical probability whether the 1980 injury caused claimant's present condition. Dr. Caldwell gave the following response:
[DR. CALDWELL] I definitely do not feel that the  that under the circumstances that the lifting caused the problem, given the circumstances that  the hypothetical situation that you just presented to me.... I do not feel that the lifting episode would have caused a permanent long-term problem. I think what that lifting episode could have done was cause a local tear in maybe the capsule around one of the joints in the back. That heals. He had some underlying arthritis and it's just getting to the point and stage in his life that it's just going to get worse the more activity he does. So I think that, yes, he could have had an acute exacerbation or aggravation of his back pain. That should disappear.
Now, again, you're asking me to try to dissect out his current symptoms. Would they have occurred had he not been working that day? Yeah, they would have occurred, with about 90 percent certainty if he bent over and tied his shoe or done some other activity. And he would still have the same limitations that he has today.
So that's the situation with back pain. It's just part of the erect posture and I can't  you know, I really cannot honestly bring up any cause and effect under the circumstances.
[CLAIMANT'S ATTORNEY] But given my set of facts and assuming that they  that is in fact what happened, would the lifting incident have aggravated the preexisting condition to cause it to become symptomatic?
[DR. CALDWELL] Yes, and it would do it, but again it would cause it to be symptomatic for a period of  short period of time, maybe two weeks  maybe six weeks to eight weeks, not permanently. Shouldn't have been a permanent problem. The underlying process was probably ongoing under those circumstances.
[ATTORNEY] But the fact that it has become permanent 
[DR. CALDWELL] Yeah, the fact that it has become permanent, as I said, I think it would have become permanent no matter what he had done.
[ATTORNEY] But did he need a triggering event?
[DR. CALDWELL] Probably not.
Dr. Caldwell opined that claimant reached MMI in 1985 with a 5% permanent impairment. Restrictions were placed on lifting, bending, and any repetitive activity involving rotation of the lower back.
On December 14, 1990, the JCC issued an order awarding claimant PTD benefits. According to the JCC, Dr. Caldwell opined that the industrial accident aggravated claimant's preexisting condition and caused the condition to become permanent. The JCC concluded as follows:
According to the evidence before me, I find that the employee/claimant has suffered an aggravation of a preexisting degenerative arthritic condition which is accompanied by hypertrophy of the bone causing said condition to again become and to remain symptomatic as a result of the traumatic event occurring on January 23, 1980, when the employee/claimant was lifting at work. The employee/claimant developed low back pain. This pain with resulting limitations has been apparent and present for more than the past ten years. It has been accepted as compensable by the employer/carrier for more than the past ten years. I find that the testimony of the employee/claimant constitutes competent substantial evidence to establish the required *280 causal connection between the accident and the resultant injury because the symptoms which he is experiencing are within the actual knowledge of the employee/claimant. I find this testimony of the employee/claimant to be sufficient even if it should conflict with the medical evidence presented. However, I do not perceive a conflict... . I find that an injury has been shown as a result of the accident of January 23, 1980, and that there is sufficient evidence to present a logical explanation of the causal relationship between the accident and the employee/claimant's ongoing and current condition. The employer/carrier has failed to show a more logical cause for the employee/claimant's current physical condition and resultant incapability of working in the same manor [sic] as before the industrial accident.
From the JCC's order, this appeal is taken.
The function of a reviewing court is to determine whether the JCC's order is supported by competent substantial evidence; reweighing the evidence is not a proper function. Redding v. Cobia Boat Co., 389 So.2d 1003 (Fla. 1980). If competent substantial evidence supports the JCC then it is irrelevant that there is also competent substantial evidence to support a contrary finding. Conshor, Inc. v. Roberts, 498 So.2d 622, 623 (Fla. 1st DCA 1986).
Despite the applicable standard of review which strongly favors an appellee/claimant, the instant case, in our view, requires reversal of the JCC's order awarding benefits. The claimant has failed to cite any case in which a claimant's testimony was accepted over expert medical testimony on the question of causation where the claimant's medical condition was not readily observable. Instead, claimant cites a number of cases in which a claimant's testimony concerning his physical capability or capacity to return to work was accepted over conflicting medical opinion. These cases stand for the unremarkable proposition that medical opinion is not conclusive as to the extent of disability, and the JCC, as the trier of fact, may choose to rely upon the claimant's testimony on this question, particularly where the pain and disability is within the sensory experience of the claimant.[2]
Closer to the point are Morton Plant Hospital, Inc. v. Craft, 547 So.2d 1024 (Fla. 1st DCA 1989), Haas v. Seekell, 538 So.2d 1333 (Fla. 1st DCA 1989), and Poorman v. Muncy & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983). In each of these cases, a claimant's testimony was used to establish causation where medical opinion on the question was inconclusive. These cases are distinguishable, however, because each included some medical testimony tending to establish causation. In both Haas and Poorman for example, two of three physicians testified consistent with a finding of causation. In Morton Plant Hospital, much of the medical testimony established causation.
The case most supportive of claimant's position is Fusco v. P & S Construction Company, 564 So.2d 526 (Fla. 1st DCA 1990). In Fusco, the claimant suffered a series of mishaps, and it was unclear whether his back injury resulted from his latest industrial accident. The only medical testimony established that the latest accident "could have" produced the back injury. The physician there also noted that the claimant's symptoms had become more severe following the last accident. Although Fusco is closer to the instant case due to the absence of unequivocal medical testimony establishing causation, it is clear that there was sufficient evidence in Fusco that is not present in the instant case. In Fusco, the claimant's treating physician noted a worsening of claimant's symptoms following the last industrial accident; the doctor opined that the industrial accident could have caused the injury. In addition, disc surgery was required after the last accident, making it more likely that this was *281 the mishap which produced the injury. In the case at hand, by contrast, Dr. Tessler testified that there had been no change in claimant's symptoms after the 1980 industrial accident. Both Drs. Tessler and Caldwell agreed that the accident only produced a temporary exacerbation of an ongoing condition. In short, the only medical evidence tended to disprove causation.
Florida adheres to the following rule put forth by Professor Larson:
Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by the commission based on any medical testimony, or, in the commoner afflictions where the commissioners themselves have acquired sufficient medical expertise, based on the commission's expert knowledge even without medical testimony, will not be disturbed on appeal.
Larson, The Law of Workmen's Compensation, § 12.25 (emphasis added); see Haas v. Seekell, supra, (quoting Larson). Claimant's condition in the case at bar cannot be considered a "commoner affliction" that is readily observable. See Teleflex, Inc. v. Arndts, 499 So.2d 45 (Fla. 1st DCA 1986) (a claimant's back condition was not readily observable where a series of accidents combined with a degenerative arthritic condition); Vero Beach Care Center v. Ricks, 476 So.2d 262, 264 n. 1 (Fla. 1st DCA 1985) ("[s]oft tissue injuries, such as lower back difficulties, are not readily observable, and hence are not subject to evaluation by lay persons"). Consequently, the instant case is subject to the rule requiring some medical evidence, and holding that lay testimony is legally insufficient to support a finding of causation. See Peters v. Armellini Express Lines, 527 So.2d 266 (Fla. 1st DCA 1988); Teleflex, Inc. v. Arndts, supra; Vero Beach Care Center v. Ricks, supra.
This court has expressed the following corollary to the above quoted rule:
[A]lthough lay testimony is of probative value in establishing the sequence of events, actual inability or ability to perform work, pain, and similar factors within the actual knowledge and sensory experience of the claimant, "lay testimony cannot be used to establish causal relationship within reasonable medical probability as to conditions and symptoms that are not readily observable." Broadfoot v. Albert Hugo Association, Inc., 478 So.2d 863, 865 (Fla. 1st DCA 1985). Therefore, lay testimony alone is not sufficient in all circumstances.
Peters v. Armellini Express Lines, supra at 269.
In the case at hand, the JCC based her finding of a causal connection on the testimony of the claimant: "I find that the testimony of the employee/claimant constitutes competent substantial evidence to establish the required causal connection between the accident and the resultant injury because the symptoms which he is experiencing are within the actual knowledge of the employee/claimant" (emphasis added). Applied in this manner, the rule is rendered meaningless. The claimant's awareness of his own symptoms says nothing about the causes of those symptoms. In this case, the claimant knew that his back hurt; he could not, and did not, testify that his pain was caused either by the lifting incident or by an ongoing degenerative arthritic condition. In short, the JCC erred to the extent she relied solely upon the claimant's testimony to establish causation. The JCC's further finding that the medical evidence established causation is refuted by a close reading of the doctors' depositions. They only established that the claimant suffered a temporary exacerbation of the preexisting condition, and we conclude that the JCC could only have arrived at her conclusion by misreading such testimony.
In sum, finding that there is no competent substantial evidence in the record to support the JCC's order finding claimant to be permanently and totally disabled, we REVERSE.
BOOTH and ALLEN, JJ., concur.
NOTES
[1] Apparently, claimant did not remember his 1977 back problem when he testified at the hearing.
[2] In his brief, claimant cites Star Fruit Company v. Canady, 159 Fla. 488, 32 So.2d 2 (1947), Magic City Bottle and Supply Company v. Robinson, 116 So.2d 240 (Fla. 1959), and Ardmore Farms, Inc. v. Squires, 395 So.2d 268 (Fla. 1st DCA 1981). The causal relationship between accident and injury was not at issue in any of these cases.