338 So.2d 225 (1976)
Robert Barry OLSEN, Appellant,
v.
The STATE of Florida, Appellee.
No. 75-47.
District Court of Appeal of Florida, Third District.
September 14, 1976.
Rehearing Denied November 1, 1976.
*226 Bailey & Brown, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen. and Ira N. Loewy, Asst. Atty. Gen., for appellee.
Before PEARSON and NATHAN, JJ., and SACK, MARTIN, Associate Judge.
PER CURIAM.
The appellant was found guilty by a jury of second degree murder and sentenced to life imprisonment. On this appeal, the main point urged is that the trial court erred in denying the public defender's withdrawal as counsel for the defendant, thereby forcing the defendant to proceed without the effective aid of counsel. Other points directed to other portions of the trial have been raised and will be considered.
The disposition of this criminal appeal has been delayed in this court by the fact that the defendant has received the services of the public defender's office and has also filed motions in his own behalf. He has been granted the right to a file a brief in his own behalf. Finally, he was represented by a private attorney through the filing of a reply brief and in oral argument.
The defendant was indicted for first degree murder on May 16, 1974. An affidavit of indigency was filed and a public defender was appointed to represent him. Approximately one month before trial, the appointed public defender moved the court for permission to withdraw on the grounds that the defendant had filed his own legal pleadings in the cause without consulting appointed counsel and had expressed a lack of trust in the public defender, thereby undermining the fiduciary attorney/client relationship. The court conducted a hearing on the motion with the defendant present. The court earnestly sought to determine whether the allegations of the motion were true. The court inquired of the defendant whether the actions alleged had affected the ability of the public defender's office to proceed with its representation of him. The defendant, in response to repeated questioning, refused to say that he wanted substitute counsel or that he wanted to represent himself. The record reveals that it was obviously defendant's position that should error be induced into the record, he was not going to do anything to prevent it.
The cause proceeded in an orderly manner and the record of the trial convinces us that the defendant received more than adequate representation. Counsel made a genuine attempt to urge the positions advanced by the defendant in his own defense.
The proof of defendant's guilt was clear and evident. The defenses presented were attacks upon procedure of the police and the court. The circumstances that led up to the indictment occurred during the late evening hours, on May 11, 1974. On that evening, William Kenney was walking south on the right-hand side of U.S. Highway 1, in the area of West Summerland Key when he heard a girl's voice screaming for help. He walked to the nearest house, knocked on the door, and asked the man who answered to call the police. He and the man then drove to where Kenney had heard the screams. At this time, he observed a maroon Corvette parked in the area. Though they *227 looked at the bushes with headlights, they saw nothing and decided to wait for the police.
Deputies Pipher and Sadler were dispatched to the scene and arrived somewhere between 9:45 and 10:00 p.m. They met Kenney and the three of them drove over to the area and down a dirt road that leads into a park. Again, they all saw the Corvette parked alongside the dirt road. A tag check was run on the car, which indicated it was not stolen. The officers then searched the area with the headlights of their vehicle, but didn't see anything. They next drove across U.S. 1 and searched the Gulf side of the road, but again saw nothing. As they returned to U.S. 1, Deputy Sadler spotted a light near the vehicle. They drove back and saw the defendant kneeling by the car with a lit match.
Deputy Pipher asked defendant what he was doing; the defendant replied he was searching for his car keys. Deputy Pipher went for a flashlight, and he and Deputy Sadler started to help defendant look for his keys. Pipher didn't find any keys, but he did find a couple of partial, false teeth, which defendant claimed he had dropped, and which Pipher returned to the defendant. While searching, they talked and the defendant said he had not heard anyone screaming in the area, that he was alone, and that he stopped to go swimming and sober up.
Deputy Pipher then walked down the path toward the beach to see whether perhaps the defendant had dropped his keys between the beach and the car. He saw some drag marks, and thinking that somebody might be camping illegally, shined the flashlight in the direction of the marks. It was then that he discovered the nude body of the victim. He examined the body, but could find no pulse, though the body was still warm. The victim had scratch and cut marks all over her body, her face was badly beaten, and her hands were tied with a T-shirt.
At this point, Deputy Pipher remembered the physical characteristics of the defendant, who was wearing cut-off jeans and no shirt, and who had marks on his left side. Both Sadler and Kenney had also noticed the defendant was scratched. Pipher recalled the one sandal which was lying just outside the car. Pipher immediately returned to the car. When he returned, he saw the defendant sitting in the front seat of the Corvette looking through the "stuff" he had in the car. Defendant was placed under arrest at that time.
The defendant was removed to the patrol car and read his rights. Pipher then roped off the area.
Detective Valdes arrived at about 11:14 p.m., which was about 45 minutes to an hour after defendant's arrest. The deputies turned over the crime scene and transported defendant to the substation at Marathon Key.
Detective Valdes examined the scene and discovered the sandal and what appeared to be brown human hair underneath the car. It was this hair which became State's Exhibit 8. Detective Valdes collected the sandal and the hair and sealed them in small evidence bags. The Corvette was then sealed with a sheriff's sticker and transported to the substation at Vaca Key.
The detectives began processing the Corvette at 4:10 a.m. that same night. A number of items were seized during the search which were admitted into evidence at the trial.
Appellant's point claiming error upon the court's denial of the public defender's motion to withdraw as defendant's counsel is dependent upon some showing in the record of a conflict between defendant and his appointed counsel sufficient to raise a reasonable possibility that because of the conflict, through an absence of effective communication or otherwise, defendant was denied the effective assistance of counsel. This record does not show such reasonable possibility. The burden should be on the defendant to show that he required substitute counsel. See Stepp v. Estelle, 524 F.2d 447 (5th Cir.1975). Cf. United States v. Burkeen, 355 F.2d 241 (6th Cir.1966). In this case, as in Gagnon v. State, Fla.App. *228 1971, 243 So.2d 219, the record does not show an allegation of incompetency or inadequacy and, indeed, it is argued only obliquely in the briefs. Appellant's position is that the very filing of the motion for withdrawal by the public defender shows a "failure to communicate." We cannot agree; the motion and the hearing thereon show that it was occasioned by defendant's filing of pro se motions. If defendant did not communicate with his court-appointed counsel, this was so because he chose not to do so. We hold that no error appears under this point.
The appellant has filed a pro se brief in addition to the brief of the public defender and the reply brief of his privately-retained counsel. Because of the peculiarities of this case and the nature of the main point presented, we have considered the points raised in the pro se brief. They are: (1) the search of defendant's automobile was illegal and the evidence seized was, therefore, inadmissible at trial; (2) the judge erred in failing to disqualify himself; and (3) the court erred in denying the defense's request for further psychiatric examinations.
As to the first point above, we hold that the search was legal. See Gagnon v. State, Fla.App. 1968, 212 So.2d 337; and Sessions v. State, Fla.App. 1968, 213 So.2d 614. These holdings are in accordance with federal standards. See Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). As to the second point, we note that the trial judge was not presented with a motion to disqualify himself pursuant to CrPR 3.230. See Wilson v. Renfroe, Fla. 1956, 91 So.2d 857. Finally, defendant's sanity was determined by the court pursuant to CrPR 3.210(a). No abuse of discretion is shown. See Child v. Wainwright, Fla. 1963, 148 So.2d 526; and Brown v. State, Fla. 1971, 245 So.2d 68. Defendant seems to argue that because the State provided him with the means for his defense, he was entitled to more than other defendants. We reject this proposition and hold that defendant was entitled to, and did receive, a fair trial under the rules of court and the applicable law.
Affirmed.