386 So.2d 1191 (1980)
Frank Anthony ROSS, Appellant,
v.
STATE of Florida, Appellee.
No. 52929.
Supreme Court of Florida.
June 12, 1980.
Rehearing Denied September 12, 1980.
*1193 Jack O. Johnson, Public Defender, and Douglas A. Lockwood, Asst. Public Defender, Bartow, and W.C. McLain, Sp. Asst. Public Defender, Fort Myers, for appellant.
Jim Smith, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
ALDERMAN, Justice.
Frank Anthony Ross was adjudged guilty of murder in the first degree and was sentenced to death. At the time he committed the offense, he lacked fifteen days being sixteen years of age. His conviction and sentence are before this Court on direct appeal pursuant to article V, section 3(b)(1), Florida Constitution. Ross also appeals his conviction of robbery.
He raises several points on appeal relating to his convictions which include whether the trial court erred in ruling that his confession was freely and voluntarily given; whether certain remarks made by the judge during instructions to the jury constitute reversible error; whether the trial court erred in denying a request by Ross for additional inquisition into his sanity; and whether the court erred in allowing the prosecutor on cross-examination to ask the psychologist, whom the defense had called as a witness, if Ross knew right from wrong. We find none of these arguments to be meritorious and therefore affirm the convictions. Several issues are also raised which relate to the sentencing phase of this case which are: whether the court erred in considering that the crime was committed during the course of a robbery and that it was committed for pecuniary gain as two separate aggravating circumstances, whether the court erred in finding that murder was committed to avoid lawful arrest, whether the court erred in not finding as a mitigating circumstance that Ross had no significant prior criminal activity, and whether the court improperly gave undue weight to the jury's recommendation that the death penalty be imposed. We find that the trial court did give undue weight to the jury's recommendation, and, for this reason, we remand the cause for resentencing by the trial judge. We also advise the trial court not to "double up" by considering as two separate aggravating circumstances that the crime was committed during the course of a robbery and that it was committed for pecuniary gain.
*1194 Ross, along with a co-defendant, was charged with first-degree murder and robbery of a sixty-four-year-old woman. The victim had been stomped to death. Ross had gained entrance into the victim's home under the pretext of wanting a drink of water. Prior to the time the victim was attacked, Ross had a knife concealed in his hand behind his back and told the victim, "I kill you." After attacking the victim and ransacking the house for valuables, Ross again stomped the disabled woman and then pulled the telephone from the wall. The pathologist who performed the autopsy stated that the victim had sustained a severe beating to her head and face. He described her body as having several bruises and abrasions on the face, multiple fractures to the skull, facial bones and jaw, severe injury to the brain, and large areas of hemorrhaging between the scalp and skull. Death resulted from cerebral injuries. It is undisputed that Ross did the actual stomping. During interviews with the police at which his parents were present, Ross confessed to the murder and robbery. At trial, Ross testified in his own behalf and demonstrated how he had stomped the victim.
Prior to trial, the court, upon defense motion, ordered that Ross be examined by Dr. Jordan, a psychologist whose credentials are not questioned, to determine whether Ross was able to assist his counsel in the preparation of a defense of the crime for which he was charged. Dr. Jordan determined that Ross was competent and capable of assisting counsel in his defense. Ross subsequently requested further inquisition into his sanity and asked the court to appoint a physician or psychiatrist to conduct this inquiry. After hearing, the trial court denied this request. He also filed a motion to suppress his confession on the basis that he was incapable of making a voluntary waiver of his Miranda rights because of his age and low mental intelligence. After hearing at which Dr. Jordan testified that Ross had the ability to comprehend his Miranda rights, the trial court denied this motion.
Although conceding that he was repeatedly advised of his Miranda rights, that his parents were present during his questioning by police officers, and that the officers used no force, promises, or other coercion to obtain his statement, Ross contends that his confession was not freely and voluntarily given since his ability to understand his rights when read to him was questionable in light of his retarded intellectual capacity. He contends that his youth and immaturity, the stressful circumstances of the questioning, and the alleged ineffectiveness of parental advice vitiate the voluntariness of his confession. His overall intellectual functioning with an IQ of sixty-six was rated by Dr. Jordan as mildly retarded. His performance IQ was rated as eighty, which is the dull normal range, while his verbal IQ was fifty-five.
The State responds that Ross was advised of his rights seven or eight times from the time he was first taken into custody, that each time he stated he understood his rights, and that he indicated he did not need a lawyer and knew he did not have to say anything. The State points out that Dr. Jordan testified that Ross had the ability to understand Miranda warnings and submits that it met its burden of demonstrating by a preponderance of the evidence that Ross's confession was voluntary. The State further argues that Ross confirmed his confession when he took the stand and testified on his own behalf.
From our review of the record, we conclude that the State met its burden of demonstrating by a preponderance of the evidence that Ross's confession was freely and voluntarily given and that Ross knowingly and intelligently waived his right to remain silent and his right to counsel. Wilson v. State, 304 So.2d 119 (Fla. 1974).
Mental weakness alone will not automatically render a confession involuntary and inadmissible. Rather, this is only a factor to be considered in determining the voluntariness of a confession. In Brown v. State, 245 So.2d 68 (Fla. 1971), we stated:
It is well settled that a person is not necessarily incompetent as a witness because *1195 he is mentally weak, and a confession is not rendered inadmissible by a low emotional and mental stability on the part of the accused if he is nevertheless capable of understanding the meaning and effect of his confession.
245 So.2d at 72. Furthermore, this Court has recognized that youthful age, although a factor to be considered in determining the voluntariness of a statement, will not render inadmissible a confession which is shown to have been made voluntarily. State v. Francois, 197 So.2d 492 (Fla. 1967).
Although Dr. Jordan determined that Ross was mildly retarded, he testified that if Ross were advised that he had the right to remain silent he would have the intellectual comprehension to understand that he had a right not to reveal any information regarding the alleged crime. Dr. Jordan also testified that if Ross were advised of his right to counsel he was able to comprehend that an attorney meant somebody to help him with the difficulty he was in. Jordan expressed the opinion that Ross would be capable of understanding his Miranda rights if they were merely read to him. He stated that, while intellectually limited, Ross evidenced an adequate grasp of basic facts and ways to deal with daily life and could distinguish between appropriate and inappropriate social behavior.
The trial court expressly determined that Ross's statement was freely and voluntarily given, and this finding is supported by the testimony presented at the suppression hearing. Any contrary inferences which might be drawn from the evidence have been resolved by the trial court in favor of the State, and we will not substitute our judgment for that of the trial court.
We note that Ross confirmed his confession when he took the stand. He testified that he stomped the victim in the head several times and demonstrated to the jury how he had stomped her.
Ross also contends that the trial court, during the course of jury instructions, made improper comments expressing a belief in Ross's guilt and, during the sentencing phase, improperly commented on the evidence. No objection to any of these allegedly improper comments was made by defense counsel.
In the absence of a contemporaneous objection, we will not reverse a conviction because an improper comment is made unless the comment is so prejudicial as to amount to "fundamental error." Cf. Clark v. State, 363 So.2d 331 (Fla. 1978). The trial court's comments, alleged by Ross to be improper, do not constitute fundamental error. To the contrary, when viewed in the entire context in which the comments were made, these comments neither prejudiced Ross nor deprived him of a fair trial. Cf. Provence v. State, 337 So.2d 783 (Fla. 1976).
Ross next argues that the trial court abused its discretion in not granting his request for appointment of a psychiatrist or physician to further evaluate his mental condition, in addition to the psychologist, Dr. Jordan, who had already been appointed to examine Ross and who had determined him competent to stand trial. He acknowledges that Florida decisions have held that it is not an abuse of discretion for the trial court to refuse to order further psychiatric examinations after the accused has been determined to be competent. See Cooper v. State, 336 So.2d 1133 (Fla. 1976); Brown v. State, supra; and Olsen v. State, 338 So.2d 225 (Fla. 3d DCA 1976). He asserts, however, that these decisions are different because in the present case only one expert, a psychologist, was appointed to examine him, while in the cases cited two experts, one of whom was a psychiatrist, had conducted the initial mental examinations. He concedes that a psychologist is competent to testify as to a person's mental condition, and he does not question Dr. Jordan's qualifications. He contends, however, that further examination of his mental condition, to determine whether he might have an organic or neurological impairment which could not be detected by Dr. Jordan, was required under the circumstances.
The State replies that Ross did not present any evidence which demonstrated a need for further mental examination, that the psychologist who examined Ross was *1196 qualified to testify as to his mental condition, and that the trial court did not abuse its discretion.
Florida Rule of Criminal Procedure 3.210 provides that the court may appoint up to three disinterested, qualified experts to examine a defendant and to testify as to his mental condition. The court held a hearing on Ross's motion for further inquisition into his sanity at which Dr. Jordan unequivocally stated that Ross was capable of assisting with his legal defense as well as understanding the nature of his crime. Dr. Jordan did say that there may be organic causes for Ross's low intellectual capacity, but he further stated that no additional tests were necessary. When asked the question of whether a determination that Ross had organic brain damage would alter his opinion that Ross was capable of assisting counsel and that Ross knew right from wrong, Dr. Jordan unhesitatingly responded in the negative.
The Louisiana decision of State v. Bennett, 345 So.2d 1129 (La. 1977), relied on by Ross as authority for his argument on this point, is distinguishable in that in Bennett the court found from the examining physicians' own admissions that their conclusions were uncertain without further clinical evaluation of the defendant. In the present case, Dr. Jordan was not uncertain of his results and did not feel that any further testing was necessary in order to make a determination that Ross knew right from wrong and was able to assist his counsel in his defense. We conclude that the trial court did not abuse its discretion when it denied Ross's motion for further psychiatric or neurological examination.
Ross also claims that the trial court erred in permitting the prosecutor, at trial, on cross-examination, to ask Dr. Jordan whether Ross knew right from wrong since the issue of his sanity had not been raised on direct examination. The State answers, and we agree, that this question was within the scope of direct examination since the testimony elicited by this question explained the psychologist's direct testimony and clarified to the jury that when the witness testified that Ross's mental IQ was less than average, this did not mean that his intellect was so weak that he did not know right from wrong. As we said in Coco v. State, 62 So.2d 892, 895 (Fla. 1953), quoting with approval the following passage from 58 Am.Jur., Witnesses § 632, at 352 (1948):
[W]hen the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts which constitute a unity, or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief by the witness on cross-examination.
See also Coxwell v. State, 361 So.2d 148 (Fla. 1978).
In addition to reviewing the record in light of the alleged errors asserted by Ross, which we find to be without merit, we have also, pursuant to Fla.App. Rule 6.16, reviewed the evidence to determine whether the interests of justice require a new trial, and we conclude that a new trial is not required. Accordingly, we affirm the convictions.
We now consider Ross's challenge to the imposition of the death penalty. The trial court delineated the aggravating circumstances to be that the murder occurred during the perpetration of robbery, that it was committed to avoid lawful arrest, that it was committed for pecuniary gain, and that it was especially heinous, atrocious, and cruel. The trial court found the following mitigating circumstances: Ross's age and his limited intellectual capacity.
Ross attacks his sentence upon several grounds. We find no merit to his contentions that the trial court erred in finding that the homicide was committed to avoid lawful arrest and that the trial court erred in not finding as a mitigating circumstance *1197 no significant history of prior criminal activity.
We do find, however, that the trial court erred in finding as two separate aggravating circumstances that the murder was committed during a robbery and that the murder was committed for pecuniary gain. See Provence v. State, 337 So.2d 783 (Fla. 1976). This factor alone would not necessarily have required reversal of the death sentence. Hargrave v. State, 366 So.2d 1 (Fla. 1978).
It appears, however, that the trial court gave undue weight to the jury's recommendation of death and did not make an independent judgment of whether or not the death penalty should be imposed. This error requires that the sentence be vacated and that the cause be remanded to the trial court for reconsideration of the sentence. Citing this Court's decisions in Tedder v. State, 322 So.2d 908 (Fla. 1975), and Thompson v. State, 328 So.2d 1 (Fla. 1976), which held that the trial court should give great weight and serious consideration to a jury's recommendation of life, the trial court reasoned that it was bound by the jury's recommendation of death. As appears from its "Findings of Aggravating and Mitigating Circumstances" the trial court felt compelled to impose the death penalty in this case because the jury had recommended death to be the appropriate penalty. It expressly stated, "[T]his Court finds no compelling reason to override the recommendation of the jury. Therefore, the advisory sentence of the jury should be followed." Ross correctly points out that the third step in Florida's statutory scheme requires the reasoned judgment of the trial judge to be interposed between the emotions of the jurors and a death sentence. Section 921.141(3), Florida Statutes (1975), provides:
(3) FINDINGS IN SUPPORT OF SENTENCE OF DEATH.  Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:
.....
We interpreted this section in State v. Dixon, 283 So.2d 1 (Fla. 1973), and said:
The third step added to the process of prosecution for capital crimes is that the trial judge actually determines the sentence to be imposed  guided by, but not bound by, the findings of the jury. To a layman, no capital crime might appear to be less than heinous, but a trial judge with experience in the facts of criminality possesses the requisite knowledge to balance the facts of the case against the standard criminal activity which can only be developed by involvement with the trials of numerous defendants. Thus the inflamed emotions of jurors can no longer sentence a man to die; the sentence is viewed in the light of judicial experience.
283 So.2d at 8.
Although this Court in Tedder v. State, supra, and Thompson v. State, supra, stated that the jury recommendation under our trifurcated death penalty statute should be given great weight and serious consideration, this does not mean that if the jury recommends the death penalty, the trial court must impose the death penalty. The trial court must still exercise its reasoned judgment in deciding whether the death penalty should be imposed. The standard for our review of death sentences where the jury has recommended life was enunciated in Tedder v. State, supra, as follows:
In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
322 So.2d at 910. In LeDuc v. State, 365 So.2d 149 (Fla. 1978), this Court considered the standard of review of a death sentence where the jury recommends death and stated:
The primary standard for our review of death sentences is that the recommended sentence of a jury should not be disturbed if all relevant data was considered, unless there appear strong reasons to believe *1198 that reasonable persons could not agree with the recommendation. On the record placed before the jury in this case, a recommended sentence of death was certainly reasonable. Indeed, the only data on which a life recommendation could have been made would have had to be grounded on the nonevidentiary recommendation of the prosecutor and the emotional plea of defense counsel.
Id. at 151. Since it appears that the trial court did not make an independent judgment whether the death sentence should be imposed, we remand to the trial court to reconsider its sentence in light of this opinion.
Accordingly, we affirm the convictions. The case is remanded, however, for the sole purpose of allowing the trial court to reconsider the imposition of the sentence of death in accordance with section 921.141[1] and consistent with this decision and with Provence v. State, supra, which prohibits the trial court from considering as two separate aggravating circumstances that the murder was committed during a robbery and that the murder was committed for pecuniary gain.
It is so ordered.
ENGLAND, C.J., and OVERTON and SUNDBERG, JJ., concur.
ADKINS, J., concurs in the conviction and would uphold the sentence of death. The judge exercised reasoned judgment in imposing a death sentence.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part and dissenting in part.
I concur with the majority opinion to the extent that it affirms the appellant's convictions of first-degree murder and robbery. However, I dissent from that portion of the majority opinion which remands the case to the trial court for reconsideration of sentence, because I believe that on the record before us the law requires that we direct the imposition of a sentence of life imprisonment without eligibility for parole for twenty-five years.
As the majority opinion correctly points out, the trial court erred in considering the fact that the murder was committed in connection with robbery and that it was committed for pecuniary gain as two separate aggravating circumstances. Provence v. State, 337 So.2d 783 (Fla. 1976). Furthermore, the evidence did not warrant a finding that the murder was committed to escape arrest or detection by eliminating the victim as a witness. "Proof of the requisite intent to avoid arrest and detection must be very strong" where a witness other than law enforcement personnel is murdered. Riley v. State, 366 So.2d 19 (Fla. 1978). In this case there is some doubt as to the motivation for the killing.
The appellant was sixteen years of age and mentally retarded at the time of the crime. His prior criminal activity consists of petty offenses. Under the standards of our capital felony sentencing law, the mitigating factors outweigh the aggravating factors. Death is not an appropriate penalty. The sentence of death should be vacated and a sentence of life imprisonment without eligibility for parole for twenty-five years should be imposed.
NOTES
[1] Although not challenging the constitutionality of section 921.141, Florida Statutes (1975), Florida's Death Penalty Statute, in his brief, Ross has filed notice of supplemental authority citing Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), wherein the Supreme Court of the United States held that Ohio's death penalty statute, restricting the sentencing judge's consideration to the statutory list of mitigating factors, violates the eighth and fourteenth amendments to the United States Constitution. In Songer v. State, 365 So.2d 696 (Fla. 1978), this Court addressed the question of whether Florida's death penalty statute is unconstitutional in light of Lockett. We concluded that, unlike the Ohio statute found invalid in Lockett, Florida's death penalty statute does not violate the eighth and fourteenth amendments to the United States Constitution since it does not limit the trial judge to consideration of only the statutorily enumerated mitigating circumstances.