525 So.2d 853 (1988)
Robert Ike COMBS, Appellant,
v.
STATE of Florida, Appellee.
No. 68477.
Supreme Court of Florida.
February 18, 1988.
Rehearing Denied April 27, 1988.
*854 Asa D. Sokolow, Marvin R. Lange and Richard L. Claman, New York City, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Kotler and James A. Young, Asst. Attys. Gen., Tampa, for appellee.
OVERTON, Justice.
Robert Ike Combs appeals the denial of his Florida Rule of Criminal Procedure 3.850 motion to vacate his conviction and sentence of death. We have jurisdiction. Art. V., § 3(b)(1), Fla. Const. In summary, we find that the United States Supreme Court's recent decision in Hitchcock v. Dugger, ___ U.S. ___, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), requires us to grant Combs a new sentencing proceeding before a new jury. We reject, however, Combs' contention that the portion of Florida's standard jury instruction which informs jurors that their recommendation is "advisory," together with similar comments made by the prosecutor to that effect, violates Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In so holding, we refuse to apply the Eleventh Circuit's decisions in Mann v. Dugger, 817 F.2d 1471, reh'g granted and opinion vacated, 828 F.2d 1498 (11th Cir.1987), and Adams v. Wainwright, 804 F.2d 1526 (11th Cir.1986), modified, 816 F.2d 1493 (11th Cir.1987), petition for cert. filed, 56 U.S.L.W. 3094 (U.S. Jul. 20, 1987) (No. 87-121). We fully address this latter issue because it affects the retrial of this case and the criticized jury instruction is part of the standard jury instructions that have been used in almost every Florida death-penalty case since 1976.
Combs was convicted in April, 1980, for a drug-related execution murder. This Court affirmed the conviction and sentence in Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). A detailed factual statement is set forth in that opinion. Combs subsequently filed this 3.850 motion attacking both his conviction and sentence of death on a number of grounds. The trial court summarily denied the motion. In this appeal, Combs has supplemented his grounds for relief to include those which rely on two recent United States Supreme Court decisions. As grounds for relief, *855 Combs now contends: (1) he was denied effective assistance of counsel in both the trial and penalty phases; (2) the trial court improperly restricted the jury's consideration of mitigating circumstances and the jury was improperly instructed in the sentencing phase of the trial in violation of Hitchcock v. Dugger; and (3) the jury was improperly led to believe that its sentencing verdict would carry very little weight in violation of Caldwell v. Mississippi.

Ineffective Assistance of Counsel
With regard to the guilt phase of the trial, Combs suggests his counsel failed to properly investigate and present certain evidence concerning the relationship between the surviving victim and the deceased victim and, in addition, failed to request an intoxication instruction. We reject Combs' contention that trial counsel's performance in the guilt phase of his trial was so ineffective that it prejudiced him and denied him a fair trial. We find the record clearly does not establish ineffective assistance of counsel for any of the alleged grounds under the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We note that much of the evidence Combs contends should have been discovered about the victims would have been inadmissible hearsay, and that the presentation of an intoxication defense would have been inconsistent with Combs' testimony that he was at home at the time of the murder and did not commit the offense. Because we direct a new sentencing hearing, we need not address the contention of ineffective assistance of counsel in the sentencing phase.

Consideration of Nonstatutory Mitigating Circumstances
Combs argues that consideration of nonstatutory mitigating circumstances by both the jury and the court was improperly restricted in the same manner as expressed by the United States Supreme Court in Hitchcock. The issue is identical to that presented in Thompson v. Dugger, 515 So.2d 173 (Fla. 1987).
In the instant case, the jury was instructed in a nearly identical manner as in Hitchcock. Further, the trial judge's order imposing the death sentence contained the following findings: "This Court ... heard and considered testimony and evidence ... regarding the statutorily enumerated aggravating and mitigating circumstances which are to be solely and alone weighed by the court in arriving at its decision." (Emphasis added.)
We have recently determined that the United States Supreme Court's consideration of Florida's capital sentencing statute in Hitchcock represents a sufficient change in the law to defeat the argument that Combs should be denied relief on the basis of a procedural default. See White v. Dugger, No. 71,184 (Fla. Jan. 1, 1988); Foster v. State, 518 So.2d 901 (Fla. 1987); Downs v. Dugger, 514 So.2d 1069 (Fla. 1987); Thompson v. Dugger, 515 So.2d 173 (Fla. 1987). Consistent with our decision in these cases, we find that Combs' death sentence was imposed in violation of Lockett and Hitchcock, and he is therefore entitled to a new sentencing hearing before a new jury. We find the principles of harmless error do not apply to the facts of this case.

The Jury's Advisory Role
We specifically address this issue because it affects the resentencing proceeding and because we are deeply disturbed about the interpretation of Florida's death penalty process and the application of Caldwell by the United States Court of Appeals for the Eleventh Circuit in its decisions in Mann v. Dugger, and Adams v. Wainwright relied on by Combs in this proceeding.
Combs contends that the prosecutor minimized the jury's role and misstated Florida law by advising the jurors during voir dire and in final argument that their decision would be advisory, and that the ultimate decision rested with the trial judge. Combs asserts the trial judge erred under Caldwell in failing to instruct the jury that a life sentence carries substantial weight and that a jury recommendation of life could be overridden only if virtually no reasonable person could differ. He further *856 asserts the trial judge erred in instructing the jury from our standard jury instructions that the "final decision as to what punishment should be imposed rests solely with the judge of this court." Combs relies on the Eleventh Circuit decisions in Mann and Adams to support this contention. We reject this argument and find Caldwell inapplicable to this case.
In Caldwell, the United States Supreme Court was considering the application of the Mississippi death penalty procedure which is dissimilar to that utilized by Florida. Under the Mississippi procedure, the jury makes the final determination of whether to impose the sentence of life or death. That sentence cannot be overridden by the trial judge and is subject to review only by the Supreme Court of Mississippi. In Caldwell, the prosecutor, in his final argument, commented: "Now, they would have you believe that you're going to kill this man and they know  they know that your decision is not the final decision. My God, how unfair can you be? Your job is reviewable. They know it." 472 U.S. at 325, 105 S.Ct. at 2637. In explaining the Mississippi procedure, the United States Supreme Court quoted with approval from one of the dissenting opinions which stated: "The [mercy] plea is made directly to the jury as only they may impose the death sentence. Under our standards of appellate review mercy is irrelevant." Id. at 331, 105 S.Ct. at 2640 (emphasis added). The United States Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." Id. at 328-29, 105 S.Ct. at 2639 (emphasis added). At the outset, we hasten to point out that in Caldwell, unlike the instant case, the defendant had objected to the Mississippi prosecutor's comment. The Caldwell opinion does not hold that the misleading statement concerning the jury's responsibility constituted fundamental error. Moreover, the Florida procedure is clearly distinguishable from the Mississippi procedure. The Florida procedure does not empower the jury with the final sentencing decision; rather, the trial judge imposes the sentence. We recognize that the cited Eleventh Circuit opinions in Mann and Adams appear to support Combs' contentions. In Mann, that court explained our sentencing procedure in the following manner:
After a jury determination of guilt, a separate sentencing hearing is held before the same jury who then renders a recommended sentence based on their assessment of the aggravating and mitigating factors. The trial judge then weighs the aggravating and mitigating factors and imposes a final sentence. In making that determination, the trial court must give great weight to the jury's recommendation, and may reject the jury's recommendation only if the facts are "so clear and convincing that virtually no reasonable person could differ." Consequently, the jury plays a "critical" role in determining the appropriateness of death.
817 F.2d at 1482 (citations omitted). The Mann panel found that the prosecutor improperly instructed the jury during voir dire examination that: (1) their sentence recommendation was advisory; (2) the ultimate responsibility for imposition of the sentence rests with the trial judge; (3) and the trial judge would have an opportunity to learn more about the defendant before he imposed a sentence. Further, that court expressly found improper the following portions of our standard jury instruction:
Final decision as to what punishment shall be imposed rests solely with the judge of this court; however, the law requires that you, the jury, render to the court an advisory sentence as to what punishment should be imposed on the defendant.
... .
... [I]t is now your duty to advise the court as to what punishment should be imposed upon the defendant.... As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the judge; however, it is your duty to follow the law that will now *857 be given you by the court and render to the court [an] advisory sentence... .
Fla.Std.Jury Instr. (Crim.) (for § 921.141, Fla. Stat.) The Mann court concluded that, because the jury had been told their recommendation was "advisory," they were left "`with a false impression as to the significance of their role in the sentencing process'" because the jury was not instructed that their recommendation would be given great weight. Mann, 817 F.2d at 1482 (quoting Adams, 804 F.2d at 1531 n. 7). The Mann court found that the trial judge's responsibility was over-emphasized, stating:
The jury was told that the alternative decision maker was the trial judge  a person jurors might view as more entitled than they to make such a decision. The court made some of the misleading comments, increasing the likelihood that the jury would believe that their recommendation would be merely advisory. Nor did the court ever withdraw or correct its misleading statements or accurately describe the jury's role.
Id. at 1482-83 (citations omitted).
We disagree with this interpretation of our death penalty instructions. Fortunately, Mann has been set aside pending rehearing en banc. We find the phraseology of section 921.141, Florida Statutes (1985), which expressly directs that the jury responsibility is "advisory," was apparently not taken into account and that our standard jury instructions appear to have been considered out of context. The majority opinions in Adams and Mann focus on the use of the term "advisory," and find its use improper. The dissent in Mann explains that "[i]t serves no purpose to dwell on the word `advisory' ... because that is the procedural structure established by the Florida statutes." 817 F.2d at 1485. It is difficult to understand the reasoning of these opinions when "advisory" is the statutory term for the jury's role and the United States Supreme Court has accepted Florida's jury role as "advisory." Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).
A simple reading of section 921.141, Florida Statutes (1985), explains why the prosecutor and defense counsel stated to the jury that its role was to render an advisory sentence. That statute provides in part:
(2) ADVISORY SENTENCE BY THE JURY.  After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
(3) FINDINGS IN SUPPORT OF SENTENCE OF DEATH.  Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death... .
Id. (emphasis added). Clearly, under our process, the court is the final decision-maker and the sentencer  not the jury. This Court had no intention of changing the clear statutory directive that the jury's role is advisory when we held that, before a judge may override a jury recommendation of life imprisonment, he must find the facts are "so clear and convincing that virtually no reasonable person could differ," Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). In fact, four months after this Court decided Tedder, we expressly approved In re Standard Jury Instructions in Criminal Cases, 327 So.2d 6 (Fla. 1976), that contains the objectionable language cited in the Adams and Mann opinions. Although the instructions have been modified and amended in 1981, In re Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla.), modified, 431 So.2d 599 (Fla. 1981), and in 1985, The Florida Bar re Standard Jury Instructions, Criminal Cases, 477 So.2d 985 (Fla. 1985), the contested language has remained the same and, consequently, has been used in virtually every death penalty case in this state since 1976. We believe the instructions, in their entirety, properly explain the jury's role under the Florida statute. The portions criticized are taken out of context and no mention is made of the last paragraph which emphasizes the importance of the jury's role:
The fact that the determination of whether you recommend a sentence of *858 death or sentence of life imprisonment in this case can be reached by a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. Before you ballot you should carefully weigh, sift and consider the evidence, and all of it, realizing that human life is at stake, and bring to bear your best judgment in reaching your advisory sentence.
Fla.Std.Jury Instr. (Crim.) (for § 921.141, Fla. Stat.) The prosecutor's statement to the jury that the trial judge may have an opportunity to learn more about the defendant before he imposes a sentence is a correct statement of the law and has been expressly approved by this Court and the United States Supreme Court. See Spaziano v. State, 433 So.2d 508 (Fla. 1983); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). The United States Supreme Court, in describing the Florida death penalty process, has expressly characterized the jury's role in Florida to be "advisory" in nature. Justice Blackmun, writing for the majority in Spaziano v. Florida, explained our procedure in the following manner:
In Florida, the jury's sentencing recommendation in a capital case is only advisory. The trial court is to conduct its own weighing of the aggravating and mitigating circumstances and, "[n]otwithstanding the recommendation of a majority of the jury," is to enter a sentence of life imprisonment or death; in the latter case, specified written findings are required. Fla. Stat. § 921.141(3) (1983).
468 U.S. at 451, 104 S.Ct. at 3157 (emphasis added). See also Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
It is important to note that in Harich v. Wainwright, 813 F.2d 1082, reh'g granted and order vacated, 828 F.2d 1497 (11th Cir.1987), a decision rendered by the Eleventh Circuit four months after Adams but two months before Mann, that panel held the identical instructions and similar comments did not mislead the jury "as to the importance of its advisory role." Id. at 1099. We realize that the opinions in Harich and Mann have now been vacated and those causes set for a rehearing en banc. If we were to apply Caldwell strictly in accordance with the Mann and Adams decisions, we would necessarily have to find that our standard jury instructions, as they have existed since 1976, violate the dictates of Caldwell. This would result in a resentencing proceeding for virtually every individual sentenced to death in this state since 1976. We find no justification exists for such a holding.

Conclusion
In accordance with our finding that Hitchcock applies, we remand this cause for a new sentencing hearing before a new jury, at which time the appellant may present all appropriate nonstatutory mitigating evidence. We reject the Caldwell claim and direct that this new sentencing hearing be completed and the sentence imposed within ninety days from the date this opinion is final.
It is so ordered.
McDONALD, C.J., and EHRLICH, GRIMES and KOGAN, JJ., concur.
SHAW, J., concurs specially with an opinion.
BARKETT, J., concurs specially with an opinion in which KOGAN, J., concurs.
SHAW, Justice, specially concurring.
I agree fully with the majority view that under Florida's death penalty system the jury's recommendation on the sentence to be imposed is only advisory and that the responsibility for determining the sentence rests on the trial judge. § 921.141, Fla. Stat. (1985). Thus, as the majority holds, Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), does not prohibit an accurate statement of the law concerning the advisory nature of the jury *859 recommendation.[1] The decision here is consistent with the position we have previously taken in Smith v. State, 515 So.2d 182 (Fla. 1987); Aldridge v. State, 503 So.2d 1257, 1259 (Fla. 1987); Pope v. Wainwright, 496 So.2d 798, 804 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987); Darden v. State, 475 So.2d 217, 221 (Fla. 1985). See also Grossman v. State, 525 So.2d 833 (Fla. 1988), issued this date.
The question which concerns me is whether the Tedder[2] rule is still viable in view of Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), Caldwell, and the decision here. In my special concurrence to Grossman, I discussed the various difficulties that application of the Tedder rule now presents, which I summarize as follows. First, the rule that a jury's recommendation of life will be followed unless the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ[3] is inconsistent with Florida's death penalty statute, section 921.141, which places no measurable weight on the jury recommendation. As a matter of law, as we hold here, the jury's recommendation is merely advisory; the trial judge is the sentencer and must base the sentence on an independent weighing of the aggravating and mitigating factors, notwithstanding the jury recommendation. Second, under section 921.141, the jury's advisory recommendation is not supported by findings of fact. This presents a serious Furman[4] problem because, if Tedder deference is paid, both this Court and the sentencing judge can only speculate as to what factors the jury found in making its recommendation and, thus, cannot rationally distinguish between those cases where death is imposed and those where it is not. Florida's statute is unlike those in states where the jury is the sentencer and is required to render special verdicts with specific findings of fact. Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Our statute tasks the trial judge with sentencing and it is to the sentencing order of the judge that we should direct our attention, not to speculation as to why or how the jury arrived at its recommendation. Third, until Witt issued, we could rely on Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), as the intellectual underpinning for the Tedder rule of deference to the jury as the conscience of the community with broad authority to determine whether death was the appropriate penalty. Witt, however, recognizes that the role of the jury under Witherspoon is inconsistent with the duties of the jury under Furman. It must be recognized that the unguided and unreviewable imposition of the death penalty by the jury acting as the conscience of the community in accordance with Witherspoon was declared to be arbitrary and capricious by Furman. Tedder represents a partial regression to the Witherspoon method of imposing the death penalty which was held unconstitutional by Furman because, while we can attempt to guide the jury by instructing it on the law, we have no mechanism for determining whether it followed the law and, thus the sentencing procedure is arbitrary and capricious. Fourth, Caldwell has serious implications relative to the Tedder rule of jury deference. The question raised by Caldwell as it applies to Florida's system is not whether the jury role is denigrated by telling it of its advisory role; the question we should be asking is whether Tedder denigrates the role of the actual sentencer, *860 the judge. The Tedder rule raises doubt as to whether the jury or judge is the de facto sentencer. I do not believe we can continue to tell sentencing judges that their sentencing decisions must be based on their independent weighing of the aggravating and mitigating circumstances, and simultaneously tell them that their de facto authority to override jury recommendations is limited to those instances where virtually no reasonable person would differ from that jury recommendation. These instructions are inescapably contradictory. I appreciate that Tedder is long standing but it, as with any other decision on capital punishment, must be revisited for conformity with evolving case law. In my view, Witt and Caldwell have cut the ground from under Tedder.
For the reasons above, and those given in my special concurrence to Grossman, I would overrule Tedder and its progeny and treat jury recommendations as advisory only as the legislature intended they be treated. I regard this as a necessary step in preserving the constitutional application of Florida's death penalty statute.
BARKETT, Justice, specially concurring.
I agree with the majority's Hitchcock analysis, and also find that this Court's recent decisions on Caldwell claims compel the result reached by the majority on that issue. E.g., Copeland v. Wainwright, 505 So.2d 425 (Fla.), vacated on other grounds, ___ U.S. ___ 108 S.Ct. 55, 98 L.Ed.2d 19 (1987). See Foster v. State, 518 So.2d 901, 902, (Fla. 1987) (Barkett, J., concurring specially) (consolidated cases); Phillips v. Dugger, 515 So.2d 227, 228, (Fla. 1987) (Barkett, J., concurring specially). But see Garcia v. State, 492 So.2d 360, 367 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986) (failure to stress importance of jury's role would violate Caldwell). I write separately to reiterate my belief that, contrary to this precedent, Caldwell indeed is applicable to Florida's sentencing scheme.
Under Tedder v. State, 322 So.2d 908 (Fla. 1975) and its progeny, the judge and jury acting together constitute the sentencer in Florida, since both exercise a part of the sentencing discretion. The advice given by the sentencing jury in Florida is so integral and important that it must be accorded great weight, e.g., Riley v. Wainwright, 517 So.2d 656 (Fla. 1987); Lamadline v. State, 303 So.2d 17 (Fla. 1974), and can be overridden by the judge only if virtually no reasonable person could agree with it. E.g., Fead v. State, 512 So.2d 176 (Fla. 1987); Ferry v. State, 507 So.2d 1373 (Fla. 1987); Tedder. The need for heightened reliability in the exercise of sentencing discretion thus must apply to both judge and jury. See Foster, at 902 (Barkett, J., concurring specially); Phillips, at 228 (Barkett, J., concurring specially). Accord Adams v. Wainwright, 804 F.2d 1526, 1529-30 (11th Cir.1986), modified, 816 F.2d 1493 (11th Cir.1987) (Caldwell requires issuance of writ of habeas corpus where trial judge, contrary to Tedder standard, tells advisory jury its recommendation can be disregarded).
Because the jury's role is so crucial in Florida, I find that appellant's Caldwell claim should be sustained under the analysis of Justice O'Connor's concurrence, which constitutes the essential holding on which a majority of the Caldwell Court agreed. 472 U.S. at 342, 105 S.Ct. at 2646 (O'Connor, J., concurring). There, Justice O'Connor concluded that the eighth amendment prohibits prosecutorial comments that are inaccurate and minimize the jury's sense of responsibility. Accord Adams, 804 F.2d at 1530. In the case at hand, the prosecutor made the following statement:
Now, if you found the Defendant guilty of first degree murder and then we got to the second part of the trial and you made a recommendation to the Court of whether it should be the death penalty or whether punishment should be life imprisonment, that is not  the Judge does not have to follow your recommendation. You could all say, "I think he should be given life in prison instead of the death penalty." It would still be up to the Judge as to what sentence he imposed. He could still  if you all said, "Give him life in prison," the Judge could *861 turn around and give him the death penalty or vice versa. You might all say, "We feel he deserves the death penalty," and a Judge could turn around and say, "I sentence you to life in prison." So your recommendation, the second part of the trial, would only be a recommendation on your part.
(Emphasis added.) During the penalty phase, the prosecutor reiterated these same comments:
We are at the stage of the proceedings where you are called upon to make an advisory recommendation to the judge as to what the penalty should be in this case. It obviously is not a pleasant situation to be in. Obviously, it is one you've never been in before and it is not an easy thing to do. Again, your recommendation this morning is advisory only. The final sentence is completely up to His Honor, Judge Reese.

(Emphasis added.) Other comments of a similar tenor are contained in the record, and the judge clearly did not correct them. These comments, which were inaccurate under Tedder, rendered this advisory sentence unreliable because they may have led the jury to believe that its role was unimportant. This is precisely the evil Caldwell sought to correct. Accord Adams.
Finally, the majority opinion's lengthy characterization of Mann v. Dugger, 817 F.2d 1471, vacated & set for reh'g, 828 F.2d 1498 (11th Cir.1987), and Adams is misleading. I agree that the broad language used in Mann, read in isolation from Adams and Harich v. Wainwright, 813 F.2d 1082, 1101, vacated & set for reh'g, 828 F.2d 1497 (11th Cir.1987) (expressly upholding penalty-phase standard jury instructions against a Caldwell claim), is susceptible of the interpretation the majority gives it. However, in light of these other two cases, it is more reasonable to conclude that Mann was based not on some fault inherent in the instructions themselves, but on the prosecutor's misleading remarks and the judge's failure to correct them. I therefore cannot agree that the Eleventh Circuit either directly or implicitly has disapproved the use of the instructions.
In response to the concerns raised in Justice Shaw's special concurrence, I cannot agree that continued adherence to the Tedder standard somehow will undermine the constitutionality of Florida's death penalty statute. Much case law says expressly and directly the opposite. E.g., Spaziano v. Florida, 468 U.S. 447, 465, 104 S.Ct. 3154, 3165, 82 L.Ed.2d 340 (1984) (Tedder standard expressly upheld as constitutional); Barclay v. Florida, 463 U.S. 939, 955-56, 103 S.Ct. 3418, 3427-28, 77 L.Ed.2d 1134 (1983) (Tedder standard cited as a factor contributing to individualized sentencing); Dobbert v. Florida, 432 U.S. 282, 294-95, 97 S.Ct. 2290, 2298-99, 53 L.Ed.2d 344 (1977) (recognizing Tedder as a significant procedural safeguard); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (discussing Tedder in upholding Florida statute). In 1984 the Supreme Court noted that
[w]e see nothing that suggests that the application of the jury-override procedure has resulted in arbitrary or discriminatory application of the death penalty, either in general or in this particular case.
Spaziano, 468 U.S. at 466, 104 S.Ct. at 3165. In Dobbert, the Supreme Court even suggested that the constitutionality of the current death penalty statute may rest partially on Tedder. 432 U.S. at 295-96, 97 S.Ct. at 2299-300 (Tedder is a "crucial protection" that helps correct constitutional infirmities of prior death penalty statute). There has been no indication that the high court intends to recede from this view. Thus, I can only conclude that Tedder, if anything, stands on a firm constitutional footing and actually contributes to the constitutional validity of the death penalty statute.
KOGAN, J., concurs.
NOTES
[1] I note particularly Justice O'Connor's separate opinion on which the Caldwell decision rests wherein she made clear that there was no constitutional bar to accurately instructing a sentencing jury on the law. 472 U.S. at 341, 105 S.Ct. at 2646. Clearly, there can be no bar to accurately instructing a non-sentencing jury of its advisory role.
[2] Tedder v. State, 322 So.2d 908 (Fla. 1975).
[3] We have adopted the same deferential standard for jury recommendations of death. Ross v. State, 386 So.2d 1191, 1197 (Fla. 1980); LeDuc v. State, 365 So.2d 149, 151 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979).
[4] Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).